UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BAIS YAAKOV OF SPRING VALLEY, on behalf of itself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>        v.<br><br>EDUCATIONAL TESTING SERVICE,<br><br>                                    Defendant. | No. 13-CV-4577 (KMK)<br><br>OPINION & ORDER |

<u>Appearances:</u>

Aytan Y. Bellin, Esq.
Erik L. Shawn, Esq.
Bellin & Associates
White Plains, NY
*Counsel for Plaintiff*

Roger Furman, Esq.
Los Angeles, CA
*Counsel for Plaintiff*

Andrew S. Kleinfeld, Esq.
Brandy H. Ranjan, Esq.
J. Todd Kennard, Esq.
Michael M. Klotz, Esq.
William J. Hine, Esq.
Jones Day
New York, NY
Columbus, OH
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Plaintiff Bais Yaakov ("Plaintiff") brings this class action suit against Defendant

Educational Testing Service ("ETS" or "Defendant"), alleging that ETS caused to be sent out

over 17,000 unsolicited and solicited fax advertisements for goods and services without the

proper opt-out notices in violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, and N.Y. General Business Law ("GBL") § 396-aa.  (*See* Second Am. Compl. (Dkt. No. 79).)  There are three Motions pending before the Court: a motion by ETS to allow ETS to deposit $10,500 with the Court in full satisfaction of Plaintiff's individual claims pursuant to Federal Rule of Civil Procedure 67, have the Court enter judgment against ETS, and dismiss the case as moot; a motion by ETS to dismiss the Second Amended Complaint under Rules 8(a) and 12(b)(6); and a motion by Plaintiff to certify a class.  This Opinion & Order addresses only the first two Motions.  For the reasons to follow, Defendant's Motions are denied.

## I.  Background

### A.  Factual Background

For purposes of these Motions, the Court takes as true all factual allegations in the Second Amended Complaint.

Plaintiff is a New York corporation with its principal place of business in Monsey, New York, and ETS is a New York corporation with its principal place of business in Princeton, New Jersey.  (*See id.* ¶¶ 6, 9.)  At its place of business in Monsey, Plaintiff receives facsimile transmissions (i.e., faxes) at a number it owns.  (*See id.* ¶ 11.)  On or about November 15, 2012, ETS and the other named Defendants, without Plaintiff's express invitation or permission, caused an unsolicited fax advertisement to be sent to Plaintiff's fax machine.  (*See id.* ¶ 12; *see also id.* Ex. A.)  The fax contained an opt-out notice that provided:

> If you do not wish to receive faxes from Houghton Mifflin Harcourt in the future, and/or if you would prefer to receive communication via email, please contact your representative.  Upon your request, we will remove you from our fax transmissions within 30 days.

(*Id.* ¶ 14; *see also id.* Ex. A.)  According to Plaintiff, this opt-out notice violated the TCPA in six ways:

(1) it failed to provide a fax number to which the recipient could transmit an opt-out request;

(2) it failed to provide a domestic telephone number to which the recipient could transmit an opt-out request;

(3) it failed to provide a cost-free mechanism through which the recipient could transmit an opt-out request;

(4) it failed to state that a recipient's opt-out request would be effective only if the request identified the fax number to which the request related;

(5) it failed to state that the sender's failure to comply with an opt-out request within 30 days is unlawful; and

(6) it failed to state that an opt-out request would be effective so long as the person opting out did not later provide express invitation or permission to the sender to send further faxes.

(*See id.* ¶ 15.)  The Second Amended Complaint also alleges that the opt-out notice violated

GBL § 396-aa for similar reasons.  (*See id.* ¶ 16.)

Plaintiff alleges that ETS and others negligently, willfully, or knowingly arranged to be

sent over 17,000 unsolicited or solicited faxes containing the same defective opt-out notice.  (*See*

*id.* ¶¶ 18–20.)  Plaintiff brings this Action on behalf of three classes of individuals:

-Class A – all persons who, from July 2, 2009, through the date of the filing of the Second Amended Complaint, received a solicited or unsolicited fax advertisement from ETS and others that contained the defective opt-out notice;

-Class B – all persons who, from July 2, 2009, through the date of the filing of the Second Amended Complaint, received an unsolicited fax advertisement from ETS and others that contained the defective opt-out notice; and

-Class C – all persons who, from July 2, 2010, through the date of the filing of the Second Amended Complaint, received a fax advertisement from ETS and others that contained the defective opt-out notice without having given ETS or others express invitation or permission to do so.

(*See id.* ¶ 22.)

For relief, Plaintiff seeks an order certifying the proposed classes, a statutory award under the TCPA and GBL § 396-aa for the alleged violations, and an injunction prohibiting Defendants from committing further violations of the TCPA.  (*See id.* at 14–15.)

B.  Procedural History

The procedural history of this case is extensive.  The original Complaint was filed on July 2, 2013, naming as Defendants Houghton Mifflin Harcourt Publishers, Inc. and Laurel Kaczor. (*See* Compl. (Dkt. No. 1).)  The substance of the allegations in the original Complaint was materially identical to that detailed above.  Shortly thereafter, on July 11, 2013, Plaintiff filed a motion to certify the class and stay decision on the motion until discovery was completed.  (*See* Dkt. Nos. 5–9.)  Those motions were terminated by the Court for failure to follow the Court's individual practices.  (*See* Dkt. No. 10.)  At a subsequent conference, the motions were reinstated, but briefing was stayed pending the Second Circuit's decision in *Bank v. Independence Energy Group LLC*, 736 F.3d 660 (2d Cir. 2013), which concerned whether state law or federal law controlled when a TCPA class action suit may proceed in federal court.  (*See* Dkt. No. 20.)  Plaintiff was permitted to obtain limited discovery, and a number of discovery disputes followed.

On August 13, 2014, Plaintiff sought leave to file a motion to amend the Complaint to add ETS as a Defendant.  (*See* Dkt. No. 44.)  Shortly after the Court scheduled a conference to address Plaintiff's proposed Motion, Defendants Houghton Mifflin Harcourt Publishers, Inc. and Laurel Kaczor wrote a letter to the Court seeking leave to file a motion to dismiss the case and to compel arbitration.  (*See* Dkt. No. 47.)  After a conference was held, Plaintiff filed an Amended Complaint, with the consent of Houghton Mifflin Harcourt Publishers, Inc. and Laurel Kaczor, to add Houghton Mifflin Harcourt Publishing Company as a Defendant.  (*See* Dkt. No. 55.)  At the

same time, Houghton Mifflin Harcourt Publishers, Inc., Houghton Mifflin Harcourt Publishing

Company, and Kaczor filed a motion to compel arbitration.  (*See* Dkt. No. 56.)  The same day,

Plaintiff filed a motion to amend its Amended Complaint to add ETS as a Defendant.  (*See* Dkt.

No. 59.)  Oral argument on the pending motions was held on July 14, 2015, after which the Court

granted Plaintiff's motion to amend and granted Defendants' motion to compel arbitration.  (*See*

Dkt. No. 78.)

On August 5, 2015, Plaintiff filed the Second Amended Complaint, adding ETS as a

Defendant, which remains the operative complaint in this Action.  (*See* Dkt. No. 79.)  At the

same time it filed a Second Amended Complaint, Plaintiff filed another motion for class

certification.  (*See* Dkt. No. 81.)  On October 2, 2015, after receiving an extension of its time to

respond to the Second Amended Complaint, ETS filed a letter motion seeking leave to file a

motion to dismiss the case and also a motion to stay the case pending the Supreme Court's

decisions in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), and *Spokeo, Inc. v. Robins*,

136 S. Ct. 1540 (2016).  (*See* Dkt. No. 96.)  A few days later, on October 13, 2015, the Parties

submitted, and the Court endorsed, a stipulation dismissing the Action against Houghton Mifflin

Harcourt Publishers, Inc., Houghton Mifflin Harcourt Publishing Company, and Laurel Kaczor.

(*See* Dkt. No. 99.)  On November 13, 2015, the Parties executed a stipulation, endorsed by the

Court, staying the case until the Supreme Court's decision in *Campbell-Ewald*.  (Dkt. No. 101.)

On January 25, 2016, the Parties alerted the Court that the Supreme Court had decided

*Campbell-Ewald*.  (Dkt. No. 103.)  On February 1, 2016, ETS filed its Motion To Dismiss the

Second Amended Complaint pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).

(*See* Dkt. No. 106.)  Two days later, ETS filed a letter motion requesting leave to file a Motion to

allow it to deposit an amount with the Court in full satisfaction of Plaintiff's individual claim,

have the Court enter judgment against ETS, and dismiss the case for lack of subject matter jurisdiction.  (*See* Dkt. No. 110.)  After a conference was held on March 8, 2016, ETS filed its Motion To Dismiss for lack of jurisdiction on March 18, 2016.  (*See* Dkt. No. 127.)  Since briefing on the pending Motions was completed, discovery has continued and the Parties have provided numerous letters with supplemental authority.

## II.  Discussion

### A.  Motion To Deposit $10,500, Enter Judgment, and Dismiss for Lack of Jurisdiction

Before the Court is permitted to indulge Defendant's Motion To Dismiss for failure to state a claim, it is obliged, with only limited exception, to determine whether it has jurisdiction over the dispute.  *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." (internal quotation marks omitted)), *aff'd*, 561 U.S. 247 (2010); *cf. In re Facebook, Inc., Initial Public Offering Derivative Litig.*, 797 F.3d 148, 155 (2d Cir. 2015) ("When a determination as to subject matter jurisdiction raises a difficult or novel question, the district court has discretion to decide certain threshold bases for dismissal without deciding whether it has subject matter jurisdiction.").

### 1.  Rule 12(b)(1) and Mootness

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Brady v. Int'l Bhd. of Teamsters Local 817*, 741 F.3d 387, 389 (2d Cir. 2014) (internal quotation marks omitted).  Dismissal under Rule 12(b)(1) is therefore proper when a case becomes moot.  *See Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("Under Article III of the

U.S. Constitution, when a case becomes moot, the federal courts lack subject matter jurisdiction over the action." (alteration and internal quotation marks omitted)).

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Where there is no unresolved case or controversy, 'mootness occurs' and 'the court—whether trial, appellate, or Supreme—loses jurisdiction over the suit, which therefore must be dismissed.'" *Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 850 F.3d 507, 511 (2d Cir. 2017) (quoting *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118–19 (2d Cir. 2001)).

## 2. Analysis

Defendant asks the Court to allow it to deposit $10,500 with the Court, which would offer Plaintiff the full individual monetary relief available to Plaintiff under the TCPA; enter judgment against Defendant in the amount of $10,500, along with an injunction prohibiting Defendant from violating the TCPA; and dismiss the case as moot under Rule 12(b)(1). (*See* Def. Educational Testing Service's Mem. of Law in Supp. of Its Mot. To Deposit Payment, Enter J. and Dismiss for Lack of Subject Matter Jurisdiction ("Def.'s 12(b)(1) Mem.") 5 (Dkt. No. 128).)[1] Prior to filing this Motion, Defendant hand delivered a cashier's check in the amount of

---

[1] In Defendant's opening brief, it offered to deposit only $10,000, which it believed at the time was the maximum amount Plaintiff could recover under the TCPA. (*See* Def.'s 12(b)(1) Mem. 9–10.) In its opposition brief, Plaintiff argued that it was actually entitled to $10,500 under the statute. (*See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. To Deposit Payment, Enter J. and Dismiss for Lack of Subject Matter Jurisdiction 22–24 (Dkt. No. 138).) In its reply, Defendant agreed to increase its deposit to $10,500. (*See* Def. Educational Testing Service's Reply Mem. of Law in Further Supp. of Its Mot. To Deposit Payment, Enter J. and Dismiss for Lack of Subject Matter Jurisdiction 5 n.5 (Dkt. No. 141).) The Court thus presumes that there is no dispute that $10,500 represents the full monetary relief that Plaintiff, as an individual, would be entitled to under the TCPA, irrespective of any incentive awards Plaintiff could obtain as a class representative.

$10,000 to Plaintiff and its counsel, and agreed by letter to the entry of an injunction barring Defendant from committing future violations of the TCPA.  (*See* Decl. of Andrew S. Kleinfeld in Supp. of Def. Educational Testing Service's Mot. To Deposit Payment, Enter J. and Dismiss for Lack of Subject Matter Jurisdiction ¶ 8 (Dkt. No. 129).)  That check was returned to Defendant by Plaintiff, (*see id.* ¶ 9), prompting Defendant to file the Motion.

### a.  Existing Precedent

The Second Circuit endorsed a similar method of disposing of a case in *McCauley v. Trans Union, LLC*, 402 F.3d 340 (2d Cir. 2005).  There, the court held that after a defendant made an offer of judgment pursuant to Federal Rule of Civil Procedure 68 that was rejected by the plaintiff, the district court erred in holding, based on the plaintiff's rejection of an offer of complete relief, that the case was moot and in entering judgment in favor of the defendant.  *See id.* at 341–42.  The court reasoned that because the entry of judgment in favor of the defendant did not create "an obligation to pay [the plaintiff] the $240 in claimed damages, the controversy between [the parties] [was] still alive."  *Id.* at 342.  The court went on to hold that it could not "conclude that the rejected settlement offer, by itself, moot[ed] the case so as to warrant entry of judgment in favor of [the defendant]."  *Id.*  But in so holding, the Second Circuit cited a "way to a better resolution" offered by the Seventh Circuit in *Chathas v. Local 134 IBEW*, 233 F.3d 508 (7th Cir. 2000): "entry of a default judgment against [the defendant]."  *McCauley*, 402 F.3d at 342 (internal quotation marks omitted).  "Such a judgment," the court reasoned, "would remove any live controversy from [the] case and render it moot," and "would serve [the defendant's] desire to end the case, would award [the plaintiff] his damages and, like the Rule 68 settlement offer, would have no preclusive effect in other litigation."  *Id.*

8

The Second Circuit revisited this procedure in *Cabala v. Crowley*, 736 F.3d 226 (2d Cir. 2013).  There, the court held, consistent with *McCauley*, that the defendant's unaccepted offer of settlement for the full amount of damages claimed did not serve to moot the case on its own.  *See id.* at 228–29.  The court pointed out that the settlement offer at issue "specifically sought to avoid entry of judgment," and the defendant "neither offered a Rule 68 entry of judgment . . . nor sought entry of judgment as authorized by *McCauley*, which under the terms of that case would have ended the litigation."  *See id.* at 229.  The Second Circuit thus reaffirmed its holding in *McCauley* that the only way to compel a plaintiff to accept an offer of complete relief is to request that the court enter judgment in the full amount requested by the plaintiff and then request that the court dismiss the case as moot.  *See id.* ("Indeed, although [the defendant] contends that his offer rendered the case moot, he never moved for dismissal of the case on that ground . . . .").

In *Tanasi v. New Alliance Bank*, 786 F.3d 195 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 979 (2016), the Second Circuit offered more analysis of the issue.  There, the court clarified that "it remains the established law of [the Second Circuit] that a rejected settlement offer under Rule 68, by itself, cannot render moot a case."  *Id.* at 200 (alterations and internal quotation marks omitted)).  "If the parties agree that a judgment should be entered against the defendant, then the district court should enter such a judgment.  Then, *after* judgment is entered, the plaintiff's individual claims will become moot for purposes of Article III."  *Id.* (citation omitted).  However, "[a]bsent such agreement," a "district court should not enter judgment against the defendant if it does not provide complete relief."  *Id.*

The Second Circuit synthesized and summarized these cases in a nonprecedential summary order, *Hepler v. Abercrombie & Fitch Co.*, 607 F. App'x 91 (2d Cir. 2015).  There, the

9

court, citing *McCauley*, *Cabala*, and *Tanasi*, held that if an offer "tenders *complete* relief, the court should (absent additional procedural complications) enter judgment pursuant to the terms of that offer, with or without the plaintiff's consent." *Hepler*, 607 F. App'x at 92. The Second Circuit went on to say that "[j]ust as a defendant may end the litigation by allowing default judgment, a defendant may always end the litigation by offering judgment for all the relief that is sought." *Id.*

There is no dispute that Defendant has generally followed the procedure outlined in the cases above. But, in light of the Supreme Court's intervening decision in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), Plaintiff argues that this procedure is inadequate, at least in the context of a class action suit.

In *Campbell-Ewald*, a plaintiff had brought a class action suit alleging that the defendant had violated the TCPA by sending Navy-recruiting text messages to individuals who had not consented to receipt of such messages. 136 S. Ct. at 667. Prior to the deadline for the plaintiff to file a motion for class certification, the defendant filed an offer of judgment pursuant to Rule 68, offering to pay the plaintiff the full statutory damages to which he was individually entitled. *Id.* at 667–68. The plaintiff rejected the offer, and the defendant thereafter moved to dismiss the case for lack of subject matter jurisdiction, arguing that the offer of complete relief mooted the plaintiff's individual claim and therefore the entire case. *See id.* at 668. The district court denied the motion, and the court of appeals affirmed that ruling. *See id.*

The Supreme Court held that the plaintiff's complaint "was not effaced by [the defendant's] unaccepted offer to satisfy his individual claim." *Id.* at 670. In so holding, the Court adopted Justice Kagan's dissent in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), wherein she reasoned that a plaintiff who rejects an offer of judgment retains an interest

in the lawsuit, because "[a]n unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect." *Campbell-Ewald*, 136 S. Ct. at 670 (internal quotation marks omitted). Thus, "[u]nder basic principles of contract law, [the defendant's] settlement bid and Rule 68 offer of judgment, once rejected, had no continuing efficacy." *Id.* The Court distinguished a number of "19th-century railroad tax cases" cited by the defendant, saying that "[i]n all three cases, the railroad's payments had fully satisfied the asserted tax claims, and so extinguished them." *Id.* at 671. The Supreme Court further emphasized that in contrast to other cases, "when the settlement offer [the defendant] extended to [the plaintiff] expired, [the plaintiff] remained emptyhanded; his TCPA complaint, which [the defendant] opposed on the merits, stood wholly unsatisfied." *Id.* at 672. The Court additionally noted that its holding was in alignment with the Second Circuit's ruling in *Tanasi*. *See id.* at 670 n.4.

One additional passage is particularly relevant to this case. In holding that "[b]ecause [the plaintiff's] individual claim was not made moot by the expired settlement offer, that claim would retain vitality during the time involved in determining whether the case could proceed on behalf of a class," the Court emphasized that "[w]hile a class lacks independent status until certified, a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." *Id.* at 672. The Supreme Court added, however, that it "need not, and [did] not, . . . decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.*

The Court does not view *Campbell-Ewald* as dispositive here. As the Supreme Court explicitly recognized, *see id.* at 670 n.4, its holding was in line with existing Second Circuit precedent, which held and continues to hold that "only a judgment and not an unaccepted Rule

11

68 offer of complete relief renders moot a plaintiff's individual claim," and that judgment may be entered against a defendant without the plaintiff's consent only if the judgment provides complete relief, *Tanasi*, 786 F.3d at 200. *Campbell-Ewald* did not involve a judgment against the defendant—indeed, one of the Court's concerns was that dismissing the case as moot, without judgment having been entered against the defendant, could result in the plaintiff remaining "emptyhanded," as the defendant would have no obligation to make good on its offer. 136 S. Ct. at 672. The dissent's suggestion, which the majority expressly declined to weigh in on, was to require the defendant to "hand the plaintiff a certified check or deposit the requisite funds in a bank account in the plaintiff's name," or to "deposit the money with the district court (or another trusted intermediary) on the condition that the money be released to the plaintiff when the court dismisses the case as moot." *Id.* at 684 (Alito, J., dissenting). Here, Defendant has not only attempted to tender the offer of judgment to Plaintiff, it has also requested both that it be allowed to deposit the offer of judgment with the Court, consistent with *Campbell-Ewald*, *and* that the Court enter judgment against it, consistent with the Second Circuit's pre-*Campbell-Ewald* case law, pushing this case far outside the bounds of *Campbell-Ewald*.

Plaintiff also points to the language in *Campbell-Ewald* that "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." *Id.* at 672. This language must be put in context—the full passage is as follows:

> In contrast to the cases [the defendant] highlights, when the settlement offer [the defendant] extended to [the plaintiff] expired, [the plaintiff] remained emptyhanded; his TCPA complaint, which [the defendant] opposed on the merits, stood wholly unsatisfied. Because [the plaintiff's] individual claim was not made moot by the expired settlement offer, that claim would retain vitality during the time involved in determining whether the case could proceed on behalf of a class. While a class lacks independent status until certified, *see Sosna v. Iowa*, 419 U.S. 393, 399, 95 S. Ct. 553, 42 L.Ed.2d 532 (1975), a would-be class representative

> with a live claim of her own must be accorded a fair opportunity to show that
> certification is warranted.

*Id.*  The statement cited by Plaintiff is, on its own, insufficient to resolve the present case.  As

Defendant points out, the Supreme Court stated that a "would-be class representative *with a live*

*claim of her own* must be accorded a fair opportunity to show that certification is warranted."  *Id.*

(emphasis added).  The Court thus held merely that where an individual plaintiff has a live claim,

the court must afford that plaintiff an opportunity to move for certification.  But that statement

begs the question of whether Plaintiff here still has a claim of its own.  That reading is

supported by the Court's explanation, in the same passage, that "[b]ecause [the plaintiff's]

individual claim was not made moot by the expired settlement offer, that claim would retain

vitality during the time involved in determining whether the case could proceed on behalf of a

class."  *Id.*  In other words, because the individual claim was not mooted by the offer—as it was

unaccepted, untendered, without a corresponding judgment, and could thus potentially leave the

plaintiff "emptyhanded"—the offer had no effect on the class either.  This unremarkable

conclusion—that an offer of settlement that is insufficient to moot an individual plaintiff's claim

is similarly insufficient to moot the class claim—gets the Court no closer to resolving whether,

as here, a tender or deposit of judgment and a request for the Court to enter judgment against the

defendant, which would ordinarily have the effect of requiring dismissal of a case by an

individual plaintiff following entry of judgment, has the same effect where the plaintiff seeks to

represent a class.

Second Circuit case law postdating *Campbell-Ewald* is largely inconclusive.  In *Bank v.*

*Alliance Health Networks, LLC*, 669 F. App'x 584 (2d Cir. 2016), an unpublished summary

order, the Second Circuit acknowledged the Supreme Court's holding that "an unaccepted Rule

68 offer of judgment, on its own, will not moot a plaintiff's claims," but went on to state that

"where judgment has been entered and where the plaintiff's claims have been satisfied, . . . any individual claims are rendered moot." *Id.* at 585.  The court noted, however, that it had "not previously addressed whether, in all cases, the rendering moot of a plaintiff's individual claims undermines that plaintiff's standing to pursue claims on behalf of a putative class." *Id.*  The court held, nonetheless, that because the plaintiff "lack[ed] any connection to a 'live claim of his own,' or any cognizable interest in pursuing the class claims," it did not need to reach the issue. *Id.* (alteration omitted) (quoting *Campbell-Ewald*, 136 S. Ct. at 672).  In so holding, the court noted that "where the individual claims of the putative class representative are rendered moot prior to certification, in general the entire action becomes moot," and therefore, because the plaintiff "was the sole individual representative for the putative class, once his claim was no longer live, no plaintiff remained in a position to pursue the class claims." *Id.* at 586 (internal quotation marks omitted).  The court recognized that there are some circumstances in which a class claim may proceed even if the named plaintiff's claim has been mooted, but held that no such circumstances existed there.  *See id.*

While *Bank* is helpful to the extent it synthesizes some of the case law, it does not answer the question here.  The court left much ambiguity in its decision, saying at one point that it need not answer whether "the rendering moot of a plaintiff's individual claims undermines that plaintiff's standing to pursue claims on behalf of a putative class," but then affirming the dismissal of the case on the ground that because the plaintiff, as the sole named plaintiff on behalf of the class, no longer had a live claim, the class action was moot.  *Id.* at 585.  The court apparently intended to draw a distinction between the circumstances in *Bank* and the typical circumstances, like those here, where a plaintiff has moved for certification, but the class has not yet been certified and the defendant seeks to moot the individual plaintiff's claim by tendering

14

complete relief and consenting to an entry of judgment.  But the Court cannot discern what that distinction might have been.  Plaintiff suggests that *Bank* is distinguishable because there, "the district court entered judgment against the putative class plaintiff, and the putative class plaintiff *deposited in his bank account the check that the defendant payed him in satisfaction of that judgment*."  (Letter from Aytan Y. Bellin, Esq., to Court (Oct. 23, 2016) 1 (Dkt. No. 179).)  *See also* Brief for Defendants-Appellees at 6, *Bank v. Alliance Health Networks, LLC*, No. 15-4037-CV (2d Cir. July 15, 2016), ECF No. 57.  Plaintiff may be correct that this is the distinction the Second Circuit sought to draw, though the Court notes that the plaintiff did not deposit the check until *after* judgment had already been entered in his favor, *see* Brief for Defendants-Appellees at 6, *Bank v. Alliance Health Networks, LLC*, No. 15-4037-CV (2d Cir. July 15, 2016), ECF No. 57; *see also* Mem. of Points and Authorities at 4, *Bank v. Alliance Health Networks, LLC*, No. 15-CV-213 (E.D.N.Y. Sept. 11, 2015), ECF No. 28-1, and Defendant makes a compelling argument that the *Bank* plaintiff's deposit of the check is merely "a distinction without a difference," (*see* Letter from Robert W. Gaffey, Esq., to Court (Oct. 25, 2016) 1 (Dkt. No. 180)). Another possibility is that the Second Circuit found *Bank* distinguishable because the plaintiff had never moved for class certification.  *See Bank*, 669 F. App'x at 586.  But whatever the Second Circuit intended to base its holding on, it suffices to say that *Bank* is a summary order, and therefore nonprecedential.  *See* 2d Cir. R. 32.1.1(a).  The Second Circuit in *Bank* did not and could not have altered the legal landscape of offers and entries of judgment.

Defendant points also to *Leyse v. Lifetime Entertainment Services, LLC*, — F. App'x —, 2017 WL 659894 (2d Cir. Feb. 15, 2017), another summary order from the Second Circuit. There, the district court granted the defendant's motion to enter judgment in the plaintiff's favor and dismiss the complaint after the defendant offered the plaintiff, an individual seeking to bring

a class action claim under the TCPA, the full amount to which the plaintiff could have been individually entitled under the statute.  *See Leyse v. Lifetime Entm't Servs., LLC*, 171 F. Supp. 3d 153, 154–55 (S.D.N.Y. 2016).  The district court noted that "*Campbell-Ewald* expressly did not reach the question of whether the district court had authority to enter a judgment for the plaintiff over the plaintiff's objections and dismiss the action, if the full amount in controversy were actually paid," and held that *Campbell-Ewald* did not "disrupt the Second Circuit's precedent allowing for the entry of judgment for the plaintiff over [the] plaintiff's objections."  *Id.* at 155.  There was little discussion of the plaintiff's status as a proposed class representative, perhaps because the plaintiff's motion for class certification had already been denied, as had his motion for reconsideration of that ruling.  *See id.* at 154.

On appeal, the Second Circuit affirmed, first addressing the district court's rulings on standing and on class certification, then discussing the district court's entry of judgment.  *See* 2017 WL 659894, at *1–3.  The Second Circuit held that *Campbell-Ewald* did not disturb existing Second Circuit precedent regarding entry of judgment and that the district court's actions fell squarely within that precedent.  *See id.* at *3.  As Plaintiff points out, *Leyse* did not discuss a situation where deposit and entry of judgment is sought *prior* to the district court's determination on a class certification motion, (*see* Letter from Aytan Y. Bellin, Esq., to Court (Feb. 20, 2017) 1 (Dkt. No. 216)), and indeed, the Second Circuit made special note that the plaintiff's "class-certification motion was litigated and resolved before [the defendant's] Fed. R. Civ. P. 68 offer," *Leyse*, 2017 WL 659894, at *3 n.2.  But as that has not happened here, and as the Court may not even consider the pending motion for class certification without first addressing Defendant's motion for entry of judgment and dismissal, *Leyse* is largely inapposite.  And, like *Bank*, *Leyse* is a summary order, and therefore of limited value.

Finally, the Parties cite to *Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 850 F.3d 507 (2d Cir. 2017), a published Second Circuit opinion.  There, the Second Circuit held that it was error for the district court to enter judgment against a defendant after the plaintiff had rejected an offer of complete relief.  *Id.* at 512–13.  The court saw no difference between the situation in *Campbell-Ewald*, where the defendant sought outright dismissal of the suit, and the circumstance in *Geismann*, where the district court had entered judgment in favor of the plaintiff in reliance on the unaccepted offer, saying that the distinction was immaterial "because the judgment should not have been entered in the first place."  *Id.* at 513.  While the Supreme Court did not purport to overrule *Tanasi*, and in fact cited that case with approval, the Second Circuit nonetheless held that "[t]he result in *Campbell-Ewald* cannot be avoided simply by entering a judgment effectuating an otherwise precluded dismissal."  *Id.*  The court held that the defendant's deposit of a check in satisfaction of the judgment *after* judgment had been entered did not cure the deficiencies, holding that the deposit "was made pursuant to and in furtherance of a judgment that should not have been entered in the first place."  *Id.* at 514.  Moreover, the court noted, the deposit "alone [did] nothing to satisfy the demand for injunctive relief."  *Id.*

In concluding, the court observed that the case did not "match[] the hypothetical posed by *Campbell-Ewald*, where the Supreme Court declined to consider whether the outcome would be different had the defendant deposited the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court *then* entered judgment for the plaintiff in that amount."  *Id.* (alterations and internal quotation marks omitted).  Instead, "the district court entered a judgment that should not have been entered in the first place, and [the defendant] then more than one year later deposited an amount in satisfaction of that errant judgment in an account payable to [the plaintiff]."  *Id.* at 514–15.  The Second Circuit added, however, in a

17

footnote, that "an attempt by the defendant to use the tactic described in the *Campbell-Ewald* hypothetical to place it in the driver's seat, might not work.  The Supreme Court's criticism of similar tactics suggests that Rule 68 should be harmonized with Rule 23."  *Id.* at 515 n.8 (citation, alteration, and internal quotation marks omitted).  The court also noted that the Supreme Court has "acknowledged that 'requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained obviously would frustrate the objectives of class actions.'"  *Id.* (alteration omitted) (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)).  *Geismann* thus, except in dicta, does not aid the Court in deciding the issue in this case—whether a defendant may moot a class action claim by tendering to the plaintiff or offering to deposit into an account with the court the full amount the individual plaintiff could receive under the statute and then requesting the court to enter judgment against the defendant in that amount, the hypothetical posed by *Campbell-Ewald*.[2]

As Plaintiff recognizes, however, some courts in the Second Circuit *have* confronted this precise question.  In *Brady v. Basic Research, LLC*, 312 F.R.D. 304 (E.D.N.Y. 2016), the court noted that the decision whether to allow a defendant to deposit an amount in full satisfaction of an individual claim pursuant to Rule 67 was "within a court's discretion," and held that in light of *Campbell-Ewald*, granting the defendants' Rule 67(a) motion was "not warranted."  *Id.* at 306.  In *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, 167 F. Supp. 3d 582 (S.D.N.Y.

---

[2] The Second Circuit recently released another nonprecedential summary order in which the court, relying on *Campbell-Ewald* and *Geismann*, reversed the entry of judgment against a defendant following an offer of complete relief.  *See Lary v. Rexall Sundown, Inc.*, — F. App'x —, 2017 WL 1314878 (2d Cir. Apr. 10, 2017).  As the court noted, the "facts of the case . . . [were] largely indistinguishable from *Geismann*," and the court noted also that the case did not match the hypothetical posed in *Campbell-Ewald*.  *Id.* at *2.  This case is thus of little help in deciding the Motion.

2016), the court cited *Campbell-Ewald* and concluded that because the individual plaintiff had not yet had a fair opportunity to certify a class, the motion to deposit payment and enter judgment against the defendants was premature. *Id.* at 583–84. Third, the court in *Bell v. Survey Sampling International, LLC*, No. 15-CV-1666, 2017 WL 1013294 (D. Conn. Mar. 15, 2017), held that it retained discretion, under Rule 67, to decline to allow the defendants to deposit the funds with the court, and that it would exercise that discretion. *Id.* at *5.

The only circuit court opinion published since *Campbell-Ewald* directly on point is *Chen v. Allstate Insurance Co.*, 819 F.3d 1136 (9th Cir. 2016). There, the Ninth Circuit held that "even if [the defendant] could moot the entire action by getting the district court to enter judgment in favor of [the plaintiff] on his individual claims before he has had a fair opportunity to move for certification," the court "would decline [the defendant's] invitation to direct the district court to take that action." *Id.* at 1144. The court first reasoned that the mere tender of the funds, and a request to allow those funds to be deposited with the court, did not itself render the plaintiff's individual claims moot. *Id.* at 1145. Even though the defendant had deposited the tendered funds into an escrow account, with instructions to the bank to pay the tendered funds to the plaintiff upon entry of judgment, the court nonetheless held that because the plaintiff had not "yet *received* any relief on his individual claims for damages or injunctive relief," the defendant's "actions plainly [had] not mooted [the plaintiff's] individual claims." *Id.* at 1145–46.

That conclusion naturally led to the question of whether the court should direct the district court to enter judgment over the plaintiff's objection. Citing *Campbell-Ewald*, the court held that "when a defendant consents to judgment affording complete relief on a named plaintiff's individual claims before certification, but fails to offer complete relief on the

19

plaintiff's class claims, a court should not enter judgment on the individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification." *Id.* at 1147.  The court noted that its decision was consistent not only with *Campbell-Ewald*, but also with earlier Supreme Court cases that disapproved of the "'picking off' of named plaintiffs to deny a would-be class representative a fair opportunity to seek class relief." *Id.* (citing *Roper*, 445 U.S. at 339).  The court thus concluded that "a district court should decline to enter a judgment affording complete relief on a named plaintiff's individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification." *Id.* at 1148.

### b.  Rule 67

With this background in mind, the Court turns now to the specific mechanism offered by Defendant to effect its objective: Rule 67.

Rule 67 provides, in full:

(a) Depositing Property.  If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it.  The depositing party must deliver to the clerk a copy of the order permitting deposit.

(b) Investing and Withdrawing Funds.  Money paid into court under this rule must be deposited and withdrawn in accordance with 28 U.S.C. §§ 2041 and 2042 and any like statute.  The money must be deposited in an interest-bearing account or invested in a court-approved, interest-bearing instrument.

The decision to allow a party to deposit funds pursuant to Rule 67 is left to the discretion of the Court.  *See Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 729 (S.D.N.Y. 2014) ("It is within the court's discretion to permit or deny such a deposit." (internal quotation marks omitted)); *N.Y. Life Ins. Co. v. Aleandre*, No. 13-CV-2384, 2014 WL 30508, at *4 (S.D.N.Y. Jan. 2, 2014) ("The [c]ourt . . . has discretion to permit such a deposit under Rule 67.").

Plaintiff objects to Defendant's use of Rule 67, arguing that Rule 67 is not designed "to provide a means of altering the contractual relationships and legal duties of each party," as "Rule 67 may not be used to effect a legal transfer of property between the litigants." *Prudential Ins. Co. of Am. v. BMC Indus., Inc.*, 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986). (*See also* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. To Deposit Payment, Enter J., and Dismiss for Lack of Subject Matter Jurisdiction 7 (Dkt. No. 138).) But Defendant does not seek to alter the "contractual relationships" or "legal duties" of any Party. There is no contractual relationship here, and deposit of the proposed amount would not alter Defendant's legal duties; the deposit merely seeks to afford Plaintiff the individual relief to which it claims it is entitled. Indeed, Plaintiff cites no case suggesting that use of the Rule 67 mechanism for this purpose is impermissible, and instead cites only to those cases where the court declined to exercise its discretion under Rule 67, *see, e.g.*, *Brady*, 312 F.R.D. at 306, and those cases where the court interpreted *Campbell-Ewald* to prohibit the entry of judgment against a class plaintiff prior to certification, irrespective of the mechanics of Rule 67, *see, e.g.*, *Graduation Source, LLC*, 167 F. Supp. 3d at 584; *Bais Yaakov of Spring Valley v. Varitronics, LLC*, No. 14-CV-5008, 2016 WL 806703, at *1 (D. Minn. Mar. 1, 2016), *aff'd*, 2016 WL 1735815 (D. Minn. May 2, 2016).

But although the Court does not read Rule 67 and the cases interpreting it as prohibiting Defendant's effort to offer complete relief here, the Court will exercise its discretion and not allow Defendant to deposit with the Court the $10,500 that represents the full statutory damages Plaintiff may be entitled to. First, the Second Circuit strongly suggested in *Geismann* that allowing the defendant to deposit the relief sought would be an abuse of Rule 67, saying that "[a]lthough the district court may, in its discretion, permit [the defendant] to deposit with the court any part of the relief sought, the basis for so granting the defendant leave to deposit must

not be inconsistent with this opinion."  850 F.3d at 515.  Second, assuming that the tender of the check to Plaintiff or the offer to deposit do not themselves moot Plaintiff's claim (an issue discussed below), Plaintiff still has a "live" claim, and thus the Supreme Court's direction in *Campbell-Ewald* that "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted," 136 S. Ct. at 672, must inform the Court's discretion.  Indeed, that was the reasoning adopted by the court in *Graduation Source*.  *See* 167 F. Supp. 3d at 584 ("Although [the] [d]efendants sought to avail themselves of the hypothetical proposed in *Campbell-Ewald* by depositing the full amount of statutory damages into the Court's Finance Unit and assenting to the injunctive relief requested by [the] [p]laintiff in its [c]omplaint, [the] [p]laintiff's individual claims remain live—this [c]ourt has not entered judgment in favor of [the] [p]laintiff and has not, by express, written order released the funds to [the] [p]laintiff." (internal quotation marks omitted)).  In light of the Supreme Court's directive, so long as a class plaintiff has a live claim, the Court should not exercise its discretion in such a way as to deprive that plaintiff of an opportunity to seek certification.

### c.  Tender Offer and Offer to Deposit

Jurisdiction, however, is not a matter of discretion, and so while the Court is not required to permit the deposit pursuant to Rule 67, if the tender of the $10,000 cashier's check or the offer to deposit $10,500 with the Court themselves, along with a judgment in Defendant's favor, moot Plaintiff's claim, the Court must dismiss the case.  After all, the Second Circuit has made clear, albeit in a nonprecedential summary order, that "a defendant may *always* end the litigation by offering judgment for all the relief that is sought," and that "[i]f the offer tenders *complete* relief, the court should (absent additional procedural complications) enter judgment pursuant to the terms of that offer, with or without the plaintiff's consent."  *Hepler*, 607 F. App'x at 92 (first

emphasis added).[3]  And the dissents in *Campbell-Ewald* gave no indication that a district court would have discretion, in their view, to retain jurisdiction notwithstanding a tender of complete individual relief.  *See Campbell-Ewald*, 136 S. Ct. at 682 (Roberts, C.J., dissenting) ("As the [d]istrict [c]ourt found, [the defendant] offered [the plaintiff] full relief.  Although [the plaintiff] nonetheless wants to continue litigating, the issue is not what the plaintiff *wants*, but what the federal courts may do."); *id.* at 685 (Alito, J., dissenting) ("While I disagree with [the] result on these facts, I am heartened that the Court appears to endorse the proposition that a plaintiff's claim *is* moot once he has 'received full redress' from the defendant for the injuries he has asserted.").

As an initial matter, Defendant runs into a problem in that while it has offered to deposit $10,500 with the Court pursuant to Rule 67, it tendered only $10,000 to the plaintiff in the form of an irrevocable payment, i.e., a cashier's check.  The Second Circuit has held that where the parties dispute the amount a plaintiff could possibly be entitled to, even if the court makes a legal determination as to the amount the plaintiff could recover, the court may enter judgment against the defendant in the amount specified over the plaintiff's objection, but may not dismiss the case as moot.  *See ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 95 (2d Cir. 2007) ("So long as the district court's ruling limiting the liability to $50 remained in force, all litigable *issues* pertaining to the defendants' liability ceased to have practical importance, because of the defendants' tender of that amount.  The *case*, however, was not moot, and the

---

[3] In his dissent in *Campbell-Ewald*, Justice Alito expressed doubt that, if a defendant tendered or otherwise delivered the disputed funds to a plaintiff, a court would have to also enter judgment in favor of the plaintiff before dismissing the case as moot.  *See Campbell-Ewald*, 136 S. Ct. at 685 n.3 (Alito, J., dissenting) (citing *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 725–26, 732–33 (2013)).  Until, however, the Supreme Court or the Second Circuit adopts Justice Alito's reasoning, this Court is bound to follow the procedures established in *McCauley* and the related cases.

court did not lose subject matter jurisdiction."). Thus, the Court could not decide that Plaintiff is entitled to only $10,000, enter judgment against Defendant for $10,000, *and* dismiss the case as moot, though it could arguably do the first two. *See id.* at 94 ("While the court properly granted final judgment to the plaintiff for $50 and denied the plaintiff's claims insofar as they sought a greater recovery, the court was mistaken in believing that the case had become moot and that the court lacked jurisdiction.").

Moreover, it is unclear how far a defendant must go to fall within the hypothetical posed by *Campbell-Ewald*. While Defendant has tendered payment to Plaintiff in the form of an irrevocable cashier's check, that check has been returned, and thus it might be said that, at least as of this moment, Plaintiff remains "emptyhanded." *Campbell-Ewald*, 136 S. Ct. at 672; *see also Chen*, 819 F.3d at 1145 ("[The plaintiff] has not yet *received* any relief on his individual claims for damages or injunctive relief. His claims are wholly unsatisfied, and it remains entirely possible for a court to grant him effectual relief."). On the other hand, both the dissent in *Campbell-Ewald* and Justice Kagan's dissent in *Genesis Healthcare* recognized that a plaintiff cannot avoid having her case mooted merely by refusing to take complete relief when it is tendered. *See Campbell-Ewald*, 136 S. Ct. at 683 n.1 (Alito, J., dissenting) ("A plaintiff cannot thwart mootness by refusing complete relief presented on a silver platter."); *Genesis Healthcare*, 133 S. Ct. at 1536 (Kagan, J., dissenting) ("To be sure, a court has discretion to halt a lawsuit by entering judgment for the plaintiff when the defendant unconditionally surrenders and only the plaintiff's obstinacy or madness prevents her from accepting total victory."). Although entry of judgment against a defendant would appear to alleviate any concern that a plaintiff could be left emptyhanded, the Second Circuit rejected such an approach in *Geismann*, *see* 850 F.3d at 514 ("[The plaintiff] thus remains emptyhanded, distinguishing this case from the trio of 19th-

century tax cases that [the defendant] cites for the proposition that [the plaintiff's] claim is extinguished; in each of those cases, the claimant accepted tender." (internal quotation marks omitted)), and the Court is thus left with little guidance as to whether the proposed method of tender here is what the Supreme Court had in mind in *Campbell-Ewald*.

Accordingly, if Defendant was required to tender to Plaintiff (and not merely offer to deposit with the Court) complete relief, its tender of $10,000 is insufficient under existing Second Circuit law to moot the case, and it may be insufficient to the extent it was rejected by Plaintiff and therefore is no longer tendered to Plaintiff. But the Court sees little efficacy in denying Defendant's Motion solely on these grounds. After all, if the Court held merely that the tender was insufficient to moot the case because it offered only $10,000, as opposed to $10,500, or because it came in the form of a cashier's check that has since been returned, instead of in the form of an escrow account to be paid to the benefit of Plaintiff following entry of judgment, there is little question that Defendant could correct those deficiencies and refile this same Motion. So while the Court cannot likely *grant*, at this moment, Defendant's Motion without Defendant first having corrected these issues (or without the Court examining the effect of these potential deficiencies), it may *deny* the Motion on other grounds as well or in the alternative. That is, the Court may decide whether, assuming Defendant's tender is otherwise sufficient under *Campbell-Ewald* and *Geismann*, entry of judgment and dismissal of the case as moot is nevertheless improper. Given the stage of this case and the likelihood that Defendant could and would correct any procedural deficiencies and bring this same Motion again, the Court finds it both efficient and in the interest of justice to determine whether the Motion may be denied on the ground that even an unconditional and irrevocable tender of judgment, combined with a consent

25

to injunctive relief, does not permit the Court to enter judgment against Defendant in the amount tendered and dismiss the case as moot.

The answer to this question, as the discussion above shows, is not simple.  Although Plaintiff does not yield the point, the Court will assume, without deciding, that *Campbell-Ewald* did not disturb the Second Circuit precedent providing that a claim for individual relief may be mooted by tender and entry of judgment.  *See Leyse*, 2017 WL 659894, at *3 ("[W]e conclude that *Campbell-Ewald Co.* does not undermine the controlling effect of *Tanasi* and similar precedents permitting the entry of judgment under these circumstances.").  The more difficult question is whether the ordinary mechanisms of tendering complete relief and requesting entry of judgment are available to moot a class action claim.

On this point, the Court finds helpful two Supreme Court cases issued the same day— *United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980), and *Roper*, 445 U.S. 326. In *Roper*, the Supreme Court considered whether it had appellate jurisdiction to review the lower court's denial of class certification after the defendant had tendered complete individual relief to the plaintiffs following denial of class certification.  445 U.S. at 327.  The Court held that it did possess such jurisdiction and reasoned that "[n]either the rejected tender nor the dismissal of the action over [the] plaintiffs' objections mooted the plaintiffs' claim on the merits so long as they retained an economic interest in class certification."  *Id.* at 332–33.  In determining whether the individual plaintiffs did, in fact, retain an "economic interest in class certification," the Court pointed to the plaintiffs' "individual interest in the resolution of the class certification question in their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails."  *Id.* at 336.  The Court noted that "[t]o deny the right to appeal simply because the defendant has sought to 'buy off' the individual private claims of the

named plaintiffs would be contrary to sound judicial administration," and that "[r]equiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objective of class actions." *Id.* at 339.  The Supreme Court therefore concluded that the district court's "entry of judgment in favor of [the] named plaintiffs over their objections did not moot their private case or controversy," and that the plaintiffs' "*individual* interest in the litigation—as distinguished from whatever may be their representative responsibilities to the putative class—[was] sufficient to permit their appeal of the adverse certification ruling." *Id.* at 340 (footnote omitted).

In a concurrence, then-Justice Rehnquist posited that the critical fact was that the defendant had "made an *unaccepted* offer of tender in settlement of the individual putative representative's claim," that the action was "moot in the [Article] III sense only if [the] Court adopt[ed] a rule that an individual seeking to proceed as a class representative is required to accept a tender of only his individual claims," and that "[s]o long as the [C]ourt does not require such acceptance, the individual is required to prove his case and the requisite [Article] III adversity continues." *Id.* at 341 (Rehnquist, J., concurring).  In Justice Rehnquist's view, "[a]cceptance need not be mandated under [the Court's] precedents since the defendant has not offered all that has been requested in the complaint (i.e., relief for the class) and any other rule would give the defendant the practical power to make the denial of class certification questions unreviewable." *Id.* (italics omitted).

*Geraghty* involved only slightly different facts—the individual plaintiff's claims had been mooted as a consequence of his claim expiring, and not by way of a tender of judgment or some other conduct by the defendant.  445 U.S. at 401.  Although judgment had not been entered

in *Geraghty*, and class certification had already been denied, the Court held that "the fact that a named plaintiff's substantive claims are mooted due to an occurrence other than a judgment on the merits does not mean that all the other issues in the case are mooted."  *Id.* at 402. Accordingly, the Court reasoned, "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied," *id.* at 404, although the Court added that it had "no view as to whether a named plaintiff who settles the individual claim after denial of class certification may, consistent with [Article] III, appeal from the adverse ruling on class certification," *id.* at 404 n.10.

These cases thus demonstrate that a plaintiff may have a concrete stake in a class action suit, even after her claims have been mooted and certification has been denied, sufficient to allow appellate review of the denial of class certification.  While the Supreme Court did not explore all of the scenarios in which a representative plaintiff retains a live claim notwithstanding the extinguishment of her individual claim, it suffices for the purpose of this Motion that the Supreme Court held squarely in *Roper* that, there, the district court's "entry of judgment in favor of [the] named plaintiffs over their objections *did not moot* their private case or controversy."  445 U.S. at 340 (emphasis added).  That is the precise situation Defendant seeks to create here.

Defendant objects that *Roper* "concerned standing in an appeal of a denial of class certification, which is not the case here."  (Def. Educational Testing Service's Reply Mem. of Law in Further Supp. of Its Mot. To Deposit Payment, Enter J. and Dismiss for Lack of Subject Matter Jurisdiction ("Def.'s 12(b)(1) Reply") 9 (Dkt. No. 141).)  This is an accurate statement, and perhaps explains why courts consider the question in this case unsettled.  But the Court is not permitted to ignore Supreme Court precedent merely because it addresses a different factual

scenario, so long as the legal principles remain relevant.  Although *Roper* involved a question of appellate jurisdiction, the Court's holding was premised on its conclusion that the individual plaintiffs retained a stake in the litigation notwithstanding that judgment had been entered against them over their objections.  Were the Court to take Defendant's invitation and limit *Roper* to its facts, that would lead to the anomalous conclusion where appellate courts would retain jurisdiction to review an order denying certification that, according to Defendant, the lower court did not have jurisdiction to enter in light of the tender of judgment.  Because mootness deprives *any* court, "whether trial, appellate, or Supreme," of jurisdiction, *Russman*, 260 F.3d at 118, there is no reason to infer from *Roper* that the Supreme Court meant to limit its discussion of mootness to the question of appellate jurisdiction.

To be sure, the district court in *Roper* denied the plaintiff's motion for class certification *before* the defendant tendered individual judgment.  *See Roper*, 445 U.S. at 329–30.  But as the Supreme Court recognized in *Geraghty*, "timing is not crucial" when assessing the relationship between mootness and class certification.  445 U.S. at 398.  Had the defendant tendered judgment before the district court denied the class certification motion, that would not have altered the plaintiff's interest in obtaining class certification, an interest the Supreme Court deemed sufficient to confer jurisdiction on appeal.  *See Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 49 n.2 (1st Cir. 2015) ("While the timing of the offer [of judgment] may make a difference in [the First C]ircuit on the question of when a class interest comes into existence, *Roper* gave no indication that it matters to the inquiry of whether an *individual* interest is preserved through a plaintiff's continuing economic interest in class certification and litigation." (citation omitted)), *cert. denied*, 136 S. Ct. 982 (2016).

Defendant also claims that *Roper* "has been overruled by the Supreme Court, which has held expressly that, an 'interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'" (Def.'s 12(b)(1) Reply 9.) In support, Defendant cites *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990). But the Supreme Court in *Lewis* made no mention of *Roper* at all, and the Court is confident that if the Supreme Court meant to overrule *Roper*, it would have given some indication to that effect. And, in any event, *Lewis* did not address the question in *Roper*—whether a representative plaintiff maintains an interest in class certification sufficient to confer appellate jurisdiction even after his individual claim has been satisfied—and merely reaffirmed longstanding precedent that an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis*, 494 U.S. at 480 (citing *Diamond v. Charles*, 476 U.S. 54, 70–71 (1986)). A freestanding desire to obtain attorney's fees, which the Supreme Court held in *Lewis* is insufficient to create a case or controversy, is different from a class representative's interest in defraying the costs of litigating its own claims and the class claims, which have substantive merit independent of the desire for attorney's fees. Moreover, the fact that the Supreme Court noted in *Genesis Healthcare* that it "need not consider [*Roper*'s] continuing validity in light of [its] subsequent decision in *Lewis*," *Genesis Healthcare*, 133 S. Ct. at 1532 n.5, offers no clarity on the issue, as the Supreme Court expressly did *not* comment on whether *Lewis* impacted *Roper*'s holding, and as set forth above, the Court sees no reason to conclude that it did, *see ACT*, 798 F.3d at 50 (noting that while *Genesis Healthcare* may have questioned the viability of *Roper*, such commentary did "not grant [the court] the prerogative of declaring *Roper* overruled").

Similar reasoning was adopted by the Tenth Circuit in *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239 (10th Cir. 2011), a decision rendered several years before *Campbell-Ewald*. There, the court rejected the district court's conclusion that "jurisdiction is not present over a case where no class has been certified but the defendant has satisfied the plaintiff's demand for relief." *Id.* at 1241 (internal quotation marks omitted). Instead, the court stated that Supreme Court precedent required it "to conclude that a named plaintiff in a proposed class action need not accept an offer of judgment or risk having his or her case dismissed as moot before the court has had a reasonable time to consider the class certification motion," and that "a nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected offer of judgment for statutory damages and costs made to a named plaintiff does not render the case moot under Article III." *Id.* at 1249.

Similarly, in light of *Roper* and *Geraghty*, the Court concludes that a representative plaintiff's claim is not mooted where a defendant tenders complete individual relief, even where no class has yet been certified. The individual plaintiff retains a "live claim" of her own, and therefore must be afforded an opportunity to seek certification of a class. If a court denies class certification, final judgment may be entered against the defendant in the amount of the individual plaintiff's claim, but, pursuant to *Roper* and *Geraghty*, while the district and appellate courts could not adjudicate the merits of the dispute, they could reconsider or overturn the decision on certification and thereby breathe life back into the merits of the class action claim. This reasoning is in alignment with then-Justice Rehnquist's concurrence in *Roper*, wherein he recognized that existing Supreme Court precedents (at that time) did not require a representative plaintiff to accept an offer of individual judgment "since the defendant has not offered all that has been requested in the complaint (i.e., relief for the class) and any other rule would give the

defendant the practical power to make the denial of class certification questions unreviewable." 445 U.S. at 341 (Rehnquist, J., concurring) (italics omitted); *see also id.* at 339 ("Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions . . . ."). As the Court sees no intervening Supreme Court precedent that dictates a different result, and as the holding in *Roper* controls unless and until it is overruled, Defendant's Motion must be denied.

In light of this ruling, the Court presumes that Defendant does not wish to deposit complete relief with the Court or have judgment entered against it. If the Court denies Plaintiff's motions for certification (with respect to all classes), the Defendant may renew its request for the Court to enter final judgment against Defendant in the amount of Plaintiff's individual claim, but that would still not render the case moot. Plaintiff would have an opportunity to appeal the Court's decision on the certification motion, and a reversal of that decision could revitalize the merits of the class claims. The Motion is therefore denied without prejudice.[4]

### B.  Motion To Dismiss for Failure to State a Claim

Separate from its effort to dismiss the case as moot, Defendant also brings a Motion To Dismiss the Second Amended Complaint for failure to state a claim under Rules 8(a) and 12(b)(6).

#### 1.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

---

[4] Plaintiff also raises arguments about the adequacy of the injunctive relief offered by Defendant and its continuing interest in obtaining an incentive award. The Court takes no position on the merits of those arguments.

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

### 2.  Analysis

Defendant argues four bases of dismissal: (1) the Second Amended Complaint fails to attribute any wrongful conduct to ETS specifically, (2) the state law claims fail because the fax does not offer a good or service for purchase, (3) some portions of the claims are barred by the statute of limitations, and (4), the claims are barred to the extent they seek an impermissible double recovery.  (*See* Def. Educational Testing Service's Mem. of Law in Supp. of Its Mot. To Dismiss Claims Against Def. Educational Testing Service ("Def.'s 12(b)(6) Mem.") (Dkt. No. 108).)  The Court will address each argument in turn.

### a.  Failure to Attribute Wrongful Conduct

Defendant first argues that the Second Amended Complaint is insufficient because Plaintiff has impermissibly lumped all Defendants together (the rest of whom have been dismissed by stipulation), has failed to allege the facts giving rise to its claims with sufficient specificity, and has based its factual allegations solely upon "information and belief."  (*See id.* at 4–10.)

It is well settled that "[R]ule 8 does not require the [p]laintiff to identify each of the [d]efendants by name each time the [c]omplaint makes an allegation that applies equally to all."

*Hard Rock Cafe Int'l (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 561–62 (S.D.N.Y. 2011) (alterations and internal quotation marks omitted); *see also Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13-CV-7639, 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015) ("Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts [the] defendants that identical claims are asserted against each defendant." (internal quotation marks omitted)).  In the TCPA context, "[p]rior to discovery, [a] plaintiff need not explain the details of each defendant's role in the planning, funding, and executing [the] defendants' alleged . . . scheme."  *Hudak v. Berkley Grp., Inc.*, No. 13-CV-89, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014).

While Defendant argues that the Second Amended Complaint "fails to distinguish among the various past and present Defendants and improperly lumps them together without attributing any specific actions or omissions to any one of them," (Def.'s 12(b)(6) Mem. 6), there is little dispute that the Second Amended Complaint gives Defendant "fair notice of what the claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (alteration and internal quotation marks omitted).  Defendant knows that the Second Amended Complaint is premised on a fax that was sent either by or on behalf of ETS, which was allegedly deficient under the TCPA.  That Plaintiff was unable, through inspection of the fax and pre-litigation discovery, to determine whether ETS sent the fax itself or merely requested that the fax be sent on its behalf is no fault of Plaintiff, and hardly serves to make the Second Amended Complaint so opaque as to "fail to give adequate notice to . . . [D]efendant[] as to what [it] did wrong."  *Medina v. Bauer*, No. 02-CV-8837, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004).

The cases cited by Defendant do not stand for the proposition that allegations in a complaint can never be made against multiple defendants simultaneously, but simply that the

ability of a plaintiff to do so depends on the claims asserted and the operative facts in each case.

*See Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 840 (D. Minn. 2012) ("In summary,

[the plaintiff] brought a bare bones, kitchen sink complaint that did not distinguish between the

defendants and which describes legally and factually unsupported (and unsupportable) claims.");

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1273 (M.D. Fla. 2009)

("The grouping of [the] [d]efendants as 'Peer Review Defendants' does not afford these

[d]efendants fair notice of the basis for the claims against them, especially considering that as to

some of these [d]efendants, no role in the peer review process is even generally described."),

*aff'd*, 451 F. App'x 862 (11th Cir. 2012); *Lippe v. Bairnco Corp.*, 225 B.R. 846, 860 (S.D.N.Y.

1998) ("To make out a RICO claim against these separate corporate defendants, [the] plaintiffs

cannot simply 'lump' all the defendants together and allege that the purported acts of every

defendant can be imputed to every other defendant."), *reargued in part*, 229 B.R. 598 (S.D.N.Y.

1999), *aff'd*, 99 F. App'x 274 (2d Cir. 2004).  The circumstances in those cases—where

plaintiffs made generalized allegations about broad conduct with no explanation as to why any

particular defendant was responsible for the conduct—are not present here, where the Second

Amended Complaint makes clear that ETS is included as a Defendant because of its role,

whatever that may be, in the distribution of unsolicited faxes advertising its services without

providing the proper opt-out notices.

Defendant also argues, in the same vein, that the Second Amended Complaint is

defective in that it does no more than "speculate that there may be a right to relief against one

defendant or another, for some facsimile, somewhere," and that the Second Amended Complaint

"does not even identify which Defendant actually sent the HMH facsimile . . . or on whose

behalf the facsimile was sent."  (Def.'s 12(b)(6) Mem. 7–8.)  It is unclear to the Court what

Defendant finds insufficient about the allegations on this point.  Plaintiff alleged all of the information it possibly could have: it received an unsolicited fax bearing the marks of both Houghton Mifflin and ETS, and the fax allegedly did not comport with the opt-out notice requirements of the TCPA.  Plaintiff, of course, did not allege, because it could not have known, what specific role ETS played in the drafting, transmission, and distribution of the fax, but that is hardly a reason to dismiss the Second Amended Complaint.  *See Ziegler v. Allied Commercial Roofing, Inc.*, No. 13-CV-2638, 2014 WL 4437316, at *2 (E.D.N.Y. Sept. 9, 2014) (denying motion to dismiss where the plaintiff alleged that "he received an unsolicited fax advertisement from [the] defendant," that the "fax was received without [the] plaintiff's express invitation or permission," and that the "defendant sent the fax willfully and knowingly in violation of the TCPA").[5]

Finally, Defendant contends that the Second Amended Complaint must be dismissed because the factual allegations are based solely on "information and belief," which Defendant contends is insufficient.  (*See* Def.'s 12(b)(6) Mem. 8–10.)

With respect to Plaintiff's allegations regarding Defendant's involvement in the transmission of the fax, that information is "peculiarly within the possession and control of . . . [D]efendant," and therefore pleading on the basis of information and belief is permissible.  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *see also Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) ("[A]s [the plaintiff] correctly observes, the names and records, if any, of

---

[5] The Court recognizes that there is some dispute as to whether the TCPA imposes liability only on those who send the fax or on whose behalf the fax was sent, or also on those whose services were advertised, perhaps without their knowledge, in the fax.  *See, e.g.*, *Varitronics*, 2015 WL 1529279, at *4.  Because Plaintiff has pleaded, however, that Defendants "knowingly arranged for and/or caused the Fax Advertisement to be sent to Plaintiff's fax machine," (Second Am. Compl. ¶ 17), there is no need to confront this legal dispute at this time.

persons who were not members of the protected classes and were more favorably treated in the

loan application process is information particularly within [the defendant's] knowledge and

control.  Pleading on the basis of information and belief is generally appropriate under such

circumstances.").  There is thus no defect in the Second Amended Complaint with respect to

those allegations.

Regarding Plaintiff's class allegations that the fax was sent to over 17,000 individuals,

the Court similarly sees no infirmity.  In the single case cited by Defendant on this point, the

plaintiff alleged merely that "upon such information and belief . . . that the number of persons

and entities of the Plaintiff Class is numerous and joinder of all members is impracticable," and

that the plaintiff was "informed and believe[d], and upon such information and belief aver[red],

that the number of class members [was] at least forty."  *Daisy, Inc. v. Pollo Operations, Inc.*, No.

14-CV-564, 2015 WL 1418607, at *5 (M.D. Fla. Mar. 27, 2015) (internal quotation marks

omitted).  The plaintiff further alleged that "the number of facsimiles, the time and date they

were sent, and the names of the recipients [were] peculiarly held within the [d]efendant['s] . . .

possession and control and [could] be ascertained via discovery."  *Id.* at *6.  Plaintiff has offered

no such barebones statement here, providing a date range for the class period and offering a

fairly specific estimate of the class size.  It is, again, unclear what Defendant would have

Plaintiff plead—Plaintiff could not possibly obtain the name and number of every class member

in advance of discovery.  Accordingly, the Court sees no reason to dismiss the Second Amended

Complaint on this ground.

### b.  No Advertisement of Goods or Services for Purchase

Defendant next argues that the state law claims, arising under GBL § 396-aa, must be

dismissed because the fax did not promote goods or services for purchase by the recipient.  (*See*

38

Def.'s 12(b)(6) Mem. 10.)  Specifically, the fax at issue here offered a free online demonstration for an online writing evaluation program developed and sold by ETS, among others.  (*See* Second Am. Compl. Ex. A.)  The fax did not specifically offer to sell the writing evaluation program, merely directing recipients to either view a 9-minute demo online or fax the form back to receive a personalized demonstration.  (*See id.*)  The fax made clear, however, that the demonstration was for a program that is sold to schools across the country.  (*See id.*)

GBL § 396-aa provides that it is unlawful "to initiate the unsolicited transmission of telefacsimile messages promoting goods or services for purchase by the recipient of such messages."  N.Y. Gen. Bus. Law § 396-aa(1).  Defendant argues that because the fax here did not actually offer to sell anything—it merely offered a free demonstration of a product that could, in the future, be purchased—the fax is not covered by the statute.  In support, Defendant points to two cases in this district involving the same Plaintiff.  *See Bais Yaakov of Spring Valley v. Richmond, the Am. Int'l Univ. in London, Inc.*, No. 13-CV-4564, 2014 WL 4626230 (S.D.N.Y. Sept. 16, 2014); *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272 (S.D.N.Y. 2013).  As Plaintiff points out, however, these cases are largely inapposite.  In *Richmond*, the court dismissed the GBL claims (at summary judgment) solely on the basis that "the fax at issue . . . [did] not promote goods or services for purchase by the fax's recipient, [the] [p]laintiff's guidance counselors."  2014 WL 4626230, at *4 (alteration and internal quotation marks omitted).  In other words, because the fax, which offered information about an overseas university, was sent to the guidance counselors but sought to solicit interest from students, the goods or services being marketed were not being marketed to the recipient, but rather to a third party (i.e., the students).  *Id.* at *1, *4–5.  Here, by contrast, there is no question that the intended recipient of the fax, the school itself, was also the intended target of any marketing effort, as the

fax marketed the writing evaluation program as a way to measure the progress of the school district.  (*See* Second Am. Compl. Ex. A.)  In *Alloy*, the fax at issue advertised free television news programs for schools, and sought no purchase by or compensation from the recipients of the fax.  *See* 936 F. Supp. 2d at 276.  The court held that the fax was not covered by GBL § 396-aa because the statute does not cover "the transmission of fax advertisements offering free goods or services."  *Id.* at 283–84.  The fax in *Alloy* was therefore very different from the fax at issue here, which, although it did not directly offer the writing evaluation program for sale, did make clear that the purpose of the fax was to induce the recipient to eventually purchase the program.

In light of the language of the statute and the content of the fax, the Court is persuaded that the fax is covered by GBL § 396-aa.  The statute covers any faxes "promoting goods or services for purchase by the recipient" of those faxes.  N.Y. Gen. Bus. Law § 396-aa.  There is no question that the fax was promoting a service—the writing evaluation program—and that that service is for sale—the fax stated that the program "can provide you proof of your district's progress," and "[i]s successfully used in more than 1,500 districts nationwide, *with over 1 million subscriptions sold*."  (Second Am. Compl. Ex. A (emphasis added).)  It strains credulity to suggest that a recipient of a fax containing this language would not view the message as "promoting goods or services for purchase"—the fax extolled the virtues of the service and indicated that other districts have purchased the service and have found success with it.  Finally, unlike in *Richmond*, there is no question that the recipient of the fax—the school—was also the intended target of the marketing promotion.  This fax fits comfortably within the plain language of the statute.

c.  Statute of Limitations

Defendant argues that because Plaintiff's claims arise out of faxes sent as far back as July 2009, and the applicable statute of limitations is either four years, *see Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 107 (2d Cir. 2013) (TCPA), or, perhaps, three years, (*see* Second Am. Compl. ¶ 3) (GBL § 396-aa),[6] any federal claims based on faxes sent prior to August 2011 (four years before the Second Amended Complaint naming Defendant was filed) and any state claims based on faxes sent prior to August 2012 are time barred, (*see* Def.'s 12(b)(6) Mem. 12). Plaintiff does not dispute this basic point, but argues that it should be permitted to engage in discovery in order to show that the Second Amended Complaint should relate back, under Rule 15(c)(1), to the date of the original Complaint, July 2, 2013.  (*See* Bais Yaakov of Spring Valley's Corrected Mem. of Law in Opp'n to Educational Testing Service, Inc.'s Mot. To Dismiss ("Pl.'s 12(b)(6) Opp'n") 14–16 (Dkt. No. 121).)

Where a plaintiff seeks to add or change a party in an amended complaint, Federal Rule of Civil Procedure 15(c)(1)(C) controls the question of whether the amended complaint may "relate back" to the original complaint, that is, to be deemed to have been filed at the time of the original complaint, thus preempting an argument by the new defendant that the statute of limitations had already run by the time the amended complaint was filed.  In order for such a complaint to relate back, the following conditions must be met:

---

[6] GBL § 396-aa does not contain a statute of limitations, and the Parties have not directed the Court to any authority regarding the appropriate statute of limitations.  The Court notes, however, that there is some authority suggesting that the statute of limitations may be one year. *See Alloy*, 936 F. Supp. 2d at 280; *see also* N.Y. C.P.L.R. § 215(4) (providing a one-year statute of limitations for "an action to enforce a penalty or forfeiture created by statute and given wholly or partly to any person who will prosecute").  Because, however, the TCPA is a broader statute and provides for a four-year statute of limitations, resolution of this question is not necessary at this juncture.

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, but for a mistake of identity, the original action would have been brought against it; and (4) the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and the original complaint was filed within the limitations period.

*Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (alterations, italics, and internal quotation marks omitted).  The Second Circuit "has interpreted the rule to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities."  *Id.*  Furthermore, "although Rule 15(c) explicitly allows the relation back of an amendment due to a mistake concerning the identity of the parties," the Second Circuit has held that "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake."  *Id.* at 517–18 (internal quotation marks omitted).

There is no dispute that the Second Amended Complaint arises "out of conduct set out in the original pleading."[7]  Defendant argues, however, that the Second Amended Complaint fails to allege that ETS knew anything about the lawsuit within the 120-day period following the filing of the original complaint.  (*See* Def.'s 12(b)(6) Mem. 13–14.)  The Court sees nothing in Rule 15(c), or in the case law interpreting the Rule, that would indicate that the elements for relation back under Rule 15(c)(1)(C) are a pleading requirement.  As Plaintiff points out, these types of issues are typically raised after some discovery has been taken, sometimes on a summary judgment motion.  *See, e.g.*, *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 127–

---

[7] Plaintiff spends some time arguing also that the failure of Plaintiff to name ETS in the original complaint is a "mistake" within the meaning of Rule 15(c)(1)(C)(ii).  (*See* Pl.'s 12(b)(6) Opp'n 15–16.)  Defendant, however, raises no argument to the contrary, and so the Court sees no need to address this issue.

28 (2d Cir. 2001) (addressing, at summary judgment, whether claims were barred by the statute of limitations because of the inapplicability of the relation back doctrine); *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 223 (E.D.N.Y. 2010) (ordering "limited discovery" on whether the defendant "had timely informal notice of [the plaintiff]'s claims and whether [the defendant] was prejudiced").

Moreover, it is well established that "[a] statute of limitations analysis is generally riddled with questions of fact which the [d]efendants must establish in order to bar [the] [p]laintiffs' claims," and that "[b]ecause of this fact-intensive burden, affirmative defenses such as the statute of limitations are generally not resolved with a motion to dismiss under Rule 12(b)(6)." *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 354 (D. Vt. 2010) (footnote, italics, alteration, and internal quotation marks omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("A motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations."). Accordingly, "because defendants have the burden of raising an affirmative defense in their answer and establishing it at trial or on a motion for summary judgment, a plaintiff, in order to state a claim[,] need not plead facts showing the absence of such a defense." *Reach Music Publ'g, Inc. v. Warner/Chappell Music, Inc.*, No. 09-CV-5580, 2009 WL 3496115, at *2 (S.D.N.Y. Oct. 23, 2009) (alterations and internal quotation marks omitted); *see also Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013) ("[B]ecause the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run.").

In such circumstances, it is not appropriate for the Court to restrict the scope of Plaintiff's claims without giving the Parties an opportunity to conduct discovery on what is indisputably an issue of fact. Defendant may raise this argument again at summary judgment, but at this juncture, there is no basis to dismiss any portion of the Second Amended Complaint as time barred.

### d.  Double Recovery

Finally, Defendant argues that the Second Amended Complaint should be dismissed to the extent it impermissibly seeks double recovery on the TCPA violations. There is no merit to this argument at this stage. As Defendant has pointed out in its papers on the pending motion for class certification, Plaintiff received no compensation whatsoever in exchange for dropping the claims against the Houghton Mifflin defendants. (*See* Supplemental Decl. of Andrew S. Kleinfeld in Further Opp'n to Pl.'s Mot. for Class Certification Ex. A, at 59–61 (Dkt. No. 183).) There is thus no threat of double recovery. And, in any event, a court in the Second Circuit facing a similar argument recently held that this question is not appropriate for resolution at the motion to dismiss stage. *See Jenkins v. Nat'l Grid USA*, No. 15-CV-1219, 2017 WL 1208445, at *10 (E.D.N.Y. Mar. 31, 2017) (holding, in the context of a motion by the defendants to dismiss on a theory of double recovery, that "consideration of [that] issue [was] premature," and "declin[ing] to make any determination in the absence of a more developed factual record"). Because there are no facts suggesting a threat of double recovery at this time, and because resolution of the issue at this stage is, in any event, premature, the Court sees no reason to weigh in on the split of authority regarding whether a plaintiff may recover statutory damages under the TCPA for each violation, or simply for each call or fax. (*See* Def.'s 12(b)(6) Mem. 15–16; Pl.'s 12(b)(6) Opp'n 16–18.)

Having reviewed all of the arguments in Defendant's Motion To Dismiss pursuant to

Rules 8(a) and 12(b)(6), there is no basis upon which to dismiss the Second Amended

Complaint. This ruling is without prejudice to Defendant's ability to raise a statute of limitations

argument at summary judgment or trial or to argue, either at summary judgment or at trial, that

Plaintiff's damages are limited to one statutory award per fax.

## III. Conclusion

For the foregoing reasons, Defendant's Motions are denied without prejudice. The Clerk

of Court is respectfully requested to terminate the pending Motions. (Dkt. Nos. 106, 127.)

SO ORDERED.

DATED:    May 8, 2017
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE