UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BAIS YAAKOV OF SPRING VALLEY, on
behalf of itself and all others similarly
situated,

                                    Plaintiff,

        v.

EDUCATIONAL TESTING SERVICE,

                                    Defendant.

No. 13-CV-4577 (KMK)

OPINION & ORDER

<u>Appearances:</u>

Aytan Y. Bellin, Esq.
Erik L. Shawn, Esq.
Bellin & Associates, LLC
White Plains, NY
*Counsel for Plaintiff*

Roger Furman, Esq.
Los Angeles, CA
*Counsel for Plaintiff*

J. Todd Kennard, Esq.
Michael M. Klotz, Esq.
Sharyl A. Reisman, Esq.
Jones Day
Columbus, OH
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Plaintiff Bais Yaakov of Spring Valley ("Bais Yaakov" or "Plaintiff") brings this Action

against Defendant Educational Testing Service ("ETS" or "Defendant"), alleging that Defendant

sent Plaintiff an unsolicited fax advertisement for goods and services without the proper opt-out

notices in violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227.

(*See* Second Am. Compl. ("SAC") (Dkt. No. 79).)  Before the Court is Defendant's Renewed

Motion for Entry of Judgment and To Dismiss for Lack of Subject Matter Jurisdiction (the

"Motion").  (Not. of Mot. (Dkt. No. 358).)  For the following reasons, Defendant's Motion is

granted.

## I.  Background

The Court has described the background of this case in depth in two prior Opinion &

Orders.  (*See* Op. & Order ("2017 Op.") (Dkt. No. 233); Op. & Order ("2019 Op.") (Dkt. No.

303).)  Here, the Court reviews and updates this background only as needed to resolve the

Motion.

The SAC contains class allegations.  (SAC ¶¶ 21–35.)  The SAC identifies three putative

classes: (1) persons who received at least one solicited or unsolicited advertisement containing a

faulty opt-out notice ("Class A"); (2) persons who received at least one unsolicited advertisement

containing a faulty opt-out notice ("Class B"); and (3) persons in New York that received an

advertisement without consent or containing a faulty opt-out notice ("Class C").  (*Id*. at ¶ 22.)

On July 11, 2017, the Court denied Plaintiff's motion to certify a class of individuals that

received solicited advertisements, disposing of Plaintiff's Class A allegations.  (Dkt. No. 240.)

On March 18, 2019, the Court granted summary judgment as to Plaintiff's state law claims,

disposing of Plaintiff's Class C allegations.  (2019 Op. 12, 47–48.)  On July 1, 2019, Plaintiff

moved to certify one class and one subclass, both falling under Class B.  (Dkt. No. 314.)  On July

8, 2020, the Court denied this motion.  (Dkt. No. 355.)

Apart from its class allegations, Plaintiff has made out an individual claim for $10,500 in

statutory damages based on Defendant's seven willful or knowing violations of the TCPA.  (Dkt.

No. 138, at 23–24.)  Plaintiff alleges that Defendant did not obtain consent to send it a fax ad,

and that Defendant's fax ad contained an opt-out notice that was deficient for various reasons. (*Id*.)  Plaintiff also seeks an injunction prohibiting Defendant from further violating the TCPA. (SAC 14.)

After denying Plaintiff's July 1, 2019 motion to certify, the Court ordered the Parties to propose next steps in the Action.  (Dkt. No. 355.)  In response, Defendant filed a joint request that it be permitted to file the instant Motion.  (Dkt. No. 356.)  This request clarified that Plaintiff intended to oppose the Motion.  (*Id*.)  The Court ordered a briefing schedule.  (Dkt. No. 357.)

On August 14, 2020, Defendant submitted its Motion.  (Not. of Mot.; Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem") (Dkt. No. 359); Decl. of Sharyl A. Reisman ("Reisman Decl.") (Dkt. No. 360); Decl. of Glenn C. Schroeder ("Schroeder Decl.") (Dkt. No. 361).)  With respect to Plaintiff's damages claims, Defendant's Motion sought an order (1) entering judgment of $12,000 plus applicable costs for Plaintiff against Defendant; and (2) dismissing these claims as moot pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  (Not. of Mot.)  One day before filing its Motion, Defendant sent a $12,000 check to Plaintiff.  (Reisman Decl. ¶ 3; *id*. Ex. A (Dkt. No. 360-1).)  Defendant's counsel represented that this payment was "unconditional," regardless of the outcome of this Action.  (Reisman Decl. ¶ 4.)  Counsel further represented that, if Plaintiff returned the check, Defendant was prepared to deposit the funds with the Court for Plaintiff's benefit.  (*Id*. at ¶ 5.)  Defendant argues that its consent to judgment on the full amount of Plaintiff's individual claim moots Plaintiff's claim for damages.  (Def.'s Mem. 6–9.)

With respect to Plaintiff's request for injunctive relief, Defendant's Motion sought an order (1) dismissing Plaintiff's request as moot; (2) dismissing Plaintiff's request as meritless; or (3) enjoining Defendant from sending faxes that violate the TCPA to Plaintiff.  (Not. of Mot.)

Defendant's Senior Vice President and General Counsel described various efforts to "ensure that no future unsolicited fax is sent to Bais Yaakov in violation of the TCPA." (Schroeder Decl. ¶ 8.)  These efforts included instructing Defendant's employees to remove Plaintiff's fax number from its internal databases, confirming that this had been done, instructing Defendant's employees to add a note to pertinent files stating that Plaintiff's fax number shall not be used in the future, and confirming that Defendant's staff understand that Plaintiff's fax number is not to be used in the future.  (*Id*. at ¶¶ 9–10.)  Defendant argues that these voluntary steps ensure that the alleged harm to Plaintiff will not recur, and moot Plaintiff's claim for injunctive relief. (Def.'s Mem. 10–11.)  Alternatively, Defendant argues that Plaintiff's request for injunctive relief is meritless because it cannot show irreparable harm or likely future faxes.  (*Id*. at 11–12.) Should these arguments fail, Defendant consents to entry of an injunction preventing it from committing unsolicited fax violations of the TCPA.  (*Id*. at 12; *see also* SAC 14 (requesting "an injunction against Defendants prohibiting them from committing further violations of the TCPA and regulations described above").)

On August 28, 2020, Plaintiff opposed the Motion.  (Pl.'s Corrected Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 364); Decl. of Aytan Y. Bellin in Opp'n to Mot. ("Bellin Decl.") (Dkt. No. 362).)[1]  Shortly before filing its Opposition, Plaintiff wrote a letter to Defendant (1) rejecting and returning the $12,000 check; and (2) rejecting Defendant's "unilateral agreement" not to send any unsolicited fax advertisements to Bais Yaakov.  (Bellin Decl. ¶ 3 & Ex. A.)  Plaintiff argues that its damages claim is not moot because, under the common law, a rejected tender of an amount due does not moot a dispute.  (Pl.'s Mem. 2–6.)

---

[1] Plaintiff on the same date submitted two memoranda of law opposing the Motion.  (*See* Pl.'s Mem; Dkt. No. 363.)  The Court treats the memorandum at Dkt. No. 364 as operative, because it is labeled the "[c]orrected" version.  (*See* Pl.'s Mem.)

However, Plaintiff does not dispute that $12,000 would fully satisfy its individual claims. (*See generally id.*) Regarding its claim for injunctive relief, Plaintiff argues that Defendant's unilateral efforts do not moot its claim. (*Id.* at 6–8.) Plaintiff further argues that the Motion is procedurally improper for a ruling on the merits of its claim for injunctive relief, and that it need not show irreparable harm to qualify for an injunction under the TCPA. (*Id.* at 8–9.) Finally, Plaintiff argues that the relief to which Defendant consents is an unenforceable "obey-the-law" injunction. (*Id.* at 7.) While Plaintiff argues that the Court can "award any relief to which a party is entitled even if that relief is not specifically requested in the complaint," (*id.* at 7–8), Plaintiff does not propose or move for any relief beyond that requested in the SAC, (*see generally id.*).

On September 29, 2020, Defendant submitted its Reply. (Def.'s Reply in Supp. of Mot. ("Def.'s Reply") (Dkt. No. 365).)

## II.  Analysis

The Court reaches the following conclusions. First, it enters judgment of $12,000 plus applicable costs for Plaintiff. Second, while Plaintiff's request for injunctive relief is not moot, it is meritless, and the Court enters judgment against it. And third, as a result of the first two conclusions, Plaintiff's case is moot and must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The Court discusses each of these conclusions in turn.

### A.  Plaintiff's Damages Claim

The Second Circuit has suggested that it is appropriate for a court to enter judgment, even over the plaintiff's objection, where the defendant has agreed to provide the plaintiff's sought-after relief. In *Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1605 (2019), the Second Circuit stated that "[its] decisions appear to recognize

that where a defendant surrenders to 'complete relief' in satisfaction of a plaintiff's claims, the district court may enter default judgment against the defendant—even without the plaintiff's agreement thereto."  909 F.3d at 542; *see also Leyse v. Lifetime Ent. Servs., LLC*, 679 F. App'x 44, 48 (2d Cir. 2017) (summary order) ("[A]n unaccepted Fed. R. Civ. P. 68 offer for complete relief . . . , if rejected, may nonetheless permit a court to enter a judgment in the plaintiff's favor.").

Plaintiff argues that the Second Circuit's statement in *ZocDoc* is dictum.  (Pl.'s Mem. 5–6.)  This is accurate.  The Second Circuit in *ZocDoc* reversed an entry of judgment on the basis that a deposit under Fed. R. Civ. P. 67 did not moot the plaintiff's claims.  *ZocDoc*, 909 F.3d at 543 ("[W]e conclude that [the defendant's] Rule 67 deposit did not provide [the plaintiff] with an entitlement to complete relief and therefore did not render its TCPA claim moot.").  In contextualizing this conclusion, the Second Circuit characterized the surrender of complete relief as an "other way[]" that a plaintiff's claim could become moot.  *ZocDoc*, 909 F.3d at 542.  Given this context, the Court finds this dictum "highly persuasive."  *Janese v. Fay*, 692 F.3d 221, 227 (2d Cir. 2012).  This is particularly true because at least two non-precedential summary orders have treated this conclusion as settled law.  *See Hepler v. Abercrombie & Fitch Co.*, 607 F. App'x 91, 92 (2d Cir. 2015) (summary order) ("If the [defendant's] offer tenders complete relief, the court should (absent additional procedural complications) enter judgment pursuant to the terms of that offer, with or without the plaintiff's consent." (emphasis omitted)); *see also Leyse*, 679 F. App'x at 48.

However, the Court need not rely on this dictum, because binding Second Circuit authority holds that it is proper for courts to enter judgment to avoid wasting time on pointless proceedings.  In *Abrams v. Interco Inc.*, 719 F.2d 23 (2d Cir. 1983), the Second Circuit affirmed

the district court's entry of a "final judgment fully satisfying named plaintiffs' private substantive claims," finding "no justification for taking the time of the court and the defendant in the pursuit of minuscule individual claims which [the] defendant has more than satisfied." *Id.* at 32 (citation omitted). The Second Circuit reached this conclusion despite the plaintiffs' opposition, which was based on concerns about whether the district court would allow fees to their attorneys. *Id.*

Relying in part on *Abrams*, the Second Circuit reached a similar conclusion in *ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.,* 485 F.3d 85 (2d Cir. 2007). There, it held that the district court did not err in entering judgment in the plaintiff's favor at the defendant's request without first finding or requiring the defendants to concede liability. *Id.* at 93–94. The Second Circuit explained that "[i]t would make no sense" to require courts "to hold a full trial on liability and damages, notwithstanding defendants' willingness to offer [the plaintiff] complete relief . . . ." *Id.* at 93. As a result, it held that "the district court correctly rejected [the plaintiff's] claim that the court should have mandated trial on an issue that had no practical consequence." *Id.* at 94. The Second Circuit in *ABN* disagreed with the district court's finding that the case was moot, because "[t]he defendants' consent to judgment against them in the amount of $50 satisfied only a tiny portion of the $500,000 dispute between the parties, as the plaintiff continue[d] to demand the full $500,000." *Id.* at 95; *see also Lovelace v. United States*, No. 00-CV-1274, 2001 WL 984686, at *3 (S.D.N.Y. Aug. 27, 2001) (finding a dispute is not moot where "[the p]laintiff seeks the immediate return of all property seized by the [defendant], whereas the [defendant's] offer to return [the p]laintiff's property is conditioned upon its continued use of the material"). As a result, the Second Circuit struck the portion of the judgment indicating that judgment was based on mootness rather than on the merits. *ABN*, 485

7

F.3d at 96.  Here, by contrast, Defendant has offered a judgment for "every cent (and more) to which . . . [P]laintiff[] claim[s] entitlement."  *Id*. at 96; *see Maximo v. 140 Green Laundromat*, No. 14-CV-6948, 2015 WL 4095248, at *3 (S.D.N.Y. July 7, 2015) (entering judgment for the plaintiff, as sought by the defendant, where "the parties agree[d] on the amount owed to [the p]laintiff"); *see also Ward v. Bank of New York*, 455 F. Supp. 2d 262, 270 (S.D.N.Y. 2006) (finding based on *Abrams* that an offer of judgment mooted the plaintiff's claims); *cf Tanasi v. New All. Bank*, 786 F.3d 195, 200 (2d Cir. 2015) ("Absent . . . agreement . . . , the district court should not enter judgment against the defendant if it does not provide complete relief.").  As mentioned, Plaintiff does not argue that a judgment of $10,500 would fall short of satisfying its damages claims.  (*See generally* Pl.'s Mem.)

Thus, because the sufficiency of Defendant's proffered judgment is not in dispute, the Court follows *Abrams* and *ABN* and enters judgment of $12,000 plus applicable costs for Plaintiff, as requested by Defendant.[2]

B.  Plaintiff's Request for Injunctive Relief

As discussed, Defendant makes two alternative arguments against Plaintiff's request for injunctive relief.  First, it argues that this request is moot.  (Def.'s Mem. 10–11.)  Second, it argues that this request is meritless.  (*Id*. at 11–12.)  A finding that the request is moot would mean that the Court lacks subject matter jurisdiction, requiring dismissal of Plaintiff's request for injunctive relief pursuant to Fed. R. Civ. P. 12(b)(1).  *See Doyle v. Midland Credit Mgmt., Inc.*,

---

[2] As a prevailing party, Plaintiff is entitled to costs other than attorney's fees.  Fed. R. Civ. P. 54(c).  Defendant argues that the $12,000 judgment includes $10,500 in statutory damages for its seven alleged TCPA violations, and the remaining $1,500 covers Plaintiff's "expected court costs."  (Def.'s Mem. 8–9.)  Plaintiff does not contest this calculation.  (*See generally* Pl.'s Mem.)  Plaintiff may recover its taxable costs in excess of $1,500 by submitting a notice of taxation of costs pursuant to Local Civil Rule 54.1.  The Court refers to Plaintiff's costs in excess of $1,500 as "applicable costs" throughout this Opinion & Order.

722 F.3d 78, 80 (2d Cir. 2013).  "Because a lack of subject matter jurisdiction renders other defenses moot, a court usually gives first consideration to a motion to dismiss under Rule 12(b)(1)."  *Fashionwear Ltd. v. Regatta LLC*, No. 03-CV-5597, 2004 WL 2210258, at *2 (S.D.N.Y. Sept. 30, 2004).  Thus, the Court first considers Defendant's argument that Plaintiff's request is moot.

### 1.  Mootness of Plaintiff's Request

"[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013) ("That is the question the voluntary cessation doctrine poses: Could the allegedly wrongful behavior reasonably be expected to recur?").  This test "is a stringent one," because if mere voluntary cessation were sufficient to moot a case, it would "leave the defendant free to return to his old ways."  *United States v. Concentrated Phosphate Exp. Ass'n, Inc.*, 393 U.S. 199, 203 (1968) (alteration, citation, and quotation marks omitted).  The Court finds that Defendant does not meet this stringent test for two reasons.

First, Defendant is free to return to its former ways.  The Second Circuit has held that a request for an injunction in a TCPA case is not moot where the defendant "offered to submit to an injunction," but "had not committed to stop sending the offending faxes."  *ZocDoc*, 909 F.3d at 542.  Consistent with this principle, courts in other circuits have found that voluntary cessation moots a case where the defendant committed to a binding agreement that it would not commit future violations.  In one case, the defendant agreed per the terms of its settlement offer to "cease the transmission of text messages to mobile subscribers who have not granted them permission to

send text messages." *Damasco v. Clearwire Corp.*, No. 10-CV-3063, 2010 WL 3522950, at *10

(N.D. Ill. Sept. 2, 2010), *aff'd*, 662 F.3d 891 (7th Cir. 2011), *overruled on other grounds*,

*Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015).  In light of this agreement, the court

in *Damasco* found that "[the p]laintiff fail[ed] to explain exactly how . . . [the d]efendant can be

reasonably expected to repeat the violations."  2010 WL 3522950, at *10.  In another case

brought by Plaintiff, the court held that the defendant "made the requisite showing" that the

alleged misconduct could not reasonably be expected to recur.  *Bais Yaakov of Spring Valley v.*

*ACT, Inc.*, 461 F. Supp. 3d 3, 4 (D. Mass. 2020), *appeal docketed*, No. 20-1537 (1st Cir. May 29,

2020).  The court noted three factors that supported its conclusion: (1) that defendant "ha[d] not

sent any fax to [the p]laintiff since 2012"; (2) that defendant "removed [the p]laintiff from its

internal databases"; and (3) that defendant "expressly agreed not to send any facsimiles in the

future to any telephone facsimile machine owned by [the plaintiff] that violate the [TCPA]."  *Id.*

at 4–5 (alteration, emphasis, quotation marks, and record citation omitted).  Regarding the third

factor, the defendant wrote a letter to the plaintiff, in which the defendant explicitly agreed "not

to send any facsimiles to [the plaintiff] in the future that violate the TCPA," and "to pay [the

plaintiff] $1,500 for any facsimile" sent, upon the plaintiff's providing "a copy of any such

facsimile . . . along with a declaration that supports its receipt by [the plaintiff] on a telephone

facsimile machine that [the plaintiff] owns."  (Dkt. No. 208, at 10 (*Bais Yaakov of Spring Valley*

*v. ACT, Inc.*, 12-CV-40088 Dkt. (D. Mass.)).)  The district court found that this agreement was

likely to be enforceable.  *Bais Yaakov*, 461 F.Supp. 3d at 5 n.2 ("[The defendant], having relied

on its agreement to this condition to moot the instant case, would be hard-pressed to disclaim it

in the future.").  Here, while Defendant has made a variety of efforts to reduce the probability

that it will fax Plaintiff, it does not claim that it has committed to a binding agreement that would

provide Plaintiff with recourse short of filing another TCPA action.  (*See generally* Schroeder

Decl.)  Unlike the defendants in *Damasco* and *ACT*, this leaves Defendant "free to return to [its]

old ways."  *Concentrated Phosphate*, 393 U.S. at 203.

Second, without additional fact finding, the Court cannot conclude as a matter of law that

Defendant's efforts, even if implemented completely, will prevent future violations.  (*See* Pl.'s

Mem. 8 ("ETS's continued failure to recognize its central role in this case is a reason for this

Court to seriously question the reliability of ETS['s] promises.").)  Defendant states that it did

not send or authorize the fax allegedly received by Plaintiff.  (Schroeder Decl. ¶ 4.)  At summary

judgment, the Court found "ample evidence to support both sides' positions" regarding whether

the fax was sent on behalf of Defendant.  (2019 Op. 45.)  A jury finding in Plaintiff's favor on

this point could suggest that the violation is reasonably likely to recur notwithstanding

Defendant's promises not to fax Plaintiff, for example due to Defendant's poor control over its

marketing distributors.  *Cf. Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 983

(N.D. Cal. 2019) (finding the plaintiff's claim for injunctive relief not moot where "[e]vidence

. . . suggest[ed] that the [defendants'] lead generating system contained many false or

questionable leads").  Thus, the Court finds that it is less than "absolutely clear [that] the

allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth*,

528 U.S. at 190.

## 2.  Merit of Plaintiff's Request

Having concluded that Plaintiff's request for injunctive relief is not moot, the Court now

considers whether it has merit, and finds that it does not.

As an initial matter, Defendant does not clarify under which Rule it seeks a finding that

Plaintiff's request for injunctive relief is meritless.  (*See* Not. of Mot.)  The Court concludes that

Defendant moves for summary judgment pursuant to Rule 56 rather than for judgment on the pleadings pursuant to Rule 12(c), for two reasons.  First, Defendant appends to the Motion several declarations referring to documents not contained in the pleadings, which could not be considered on a motion brought pursuant to Rule 12.  (*See* Reisman Decl.; Schroeder Decl.) Second, Defendant refers to Rule 56 in its Reply, arguing that Plaintiff points to no disputed facts requiring further proceedings on injunctive relief.  (Def.'s Reply 6.)  While Defendant did not submit a statement as required by Local Civil Rule 56.1, the Court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  *Gotlin v. Lederman*, 616 F. Supp. 2d 376, 388 (E.D.N.Y. 2009) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001)) (overlooking the parties' failure to submit Rule 56.1 statements), *aff'd in part, vacated in part sub nom. Gotlin ex rel. County of Richmond v. Lederman*, 483 F. App'x 583 (2d Cir. 2012).  Further, given Defendant's submission of and reliance on declarations, the Court finds that Plaintiff, who is represented by experienced and highly competent counsel, "should reasonably have recognized the possibility that the [M]otion might be [taken as] one for summary judgment, and was neither taken by surprise nor deprived of a reasonable opportunity to meet facts outside the pleadings."  *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (citation and alterations omitted).

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).  "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted).

To receive a permanent injunction, a plaintiff typically must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  A grant of a permanent injunction is reviewed for abuse of discretion. *Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016).

Plaintiff argues that this test does not apply, because it "is not required to show irreparable harm to be entitled to an injunction under the TCPA."  (Pl.'s Mem. 9.)  The Court disagrees.  Plaintiff relies on two Eighth Circuit cases concerning the federal government's burden in proving an entitlement to injunctive relief under the Internal Revenue Code.  *See United States v. Stover*, 650 F.3d 1099, 1106–07 (8th Cir. 2011) (holding that, where "the government sought equitable relief expressly authorized by [a federal tax statute,] . . . [t]he

13

traditional criteria for permanent injunctive relief need not be discussed"); *see also United States v. White*, 769 F.2d 511, 514–15 (8th Cir. 1985).  However, in both of these cases, "[t]he statute . . . set forth specific criteria for granting injunctive relief."  *See Perrong v. Liberty Power Corp., L.L.C.*, 411 F. Supp. 3d 258, 270 (D. Del. 2019).  In *Perrong*, the court held that, because the TCPA "proposes no prerequisites for injunctive relief, *Stover* does not apply and [the plaintiff] must establish standing for his claim for an injunction by showing that he is likely to suffer future injury."  *Id.*  Indeed, this is consistent with the general rule as articulated by the Second Circuit.  *See Town of Huntington v. Marsh*, 859 F.2d 1134, 1143 (2d Cir. 1988) (holding that "injunctive relief does not follow automatically upon a finding of statutory violations," and finding that it is, instead, "guided by traditional equitable principles"); *see also eBay*, 547 U.S. at 392–93 ("[The Supreme] Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed.").

The Court enters judgment against Plaintiff's request for injunctive relief because there is no genuine dispute regarding the likelihood of future harm.  (*See* Def.'s Mem. 12 ("[T]here is no realistic likelihood that such harm [a TCPA violation by Defendant] will occur in the future . . . .").)  A plaintiff has standing to sue for injunctive relief only if "there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1982) (citation omitted).  Here, Plaintiff fails to contest Defendant's claims that it has made efforts not to contact Plaintiff via fax in the future.  (*See* Schroeder Decl. ¶¶ 9–10; *see generally* Pl.'s Mem.)  At least three courts have dismissed or affirmed the dismissal of requests for injunctive relief in analogous circumstances.  *See, e.g.*, *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ("Because [the plaintiff has not] established . . . a likelihood of future

harm . . . , he was not entitled to an injunction." (citing *Lyons*, 461 U.S. at 105)); *Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445, 2019 WL 3812063, at *18 (S.D.N.Y. Aug. 14, 2019) (finding, where the plaintiffs "offer no testimony or other evidence contradicting" a declaration explaining the low probability of future wrong-number calls, that the plaintiffs "ha[d] not demonstrated that they possessed the initial standing to seek injunctive relief"); *Miller v. Time Warner Cable Inc.*, No. 16-CV-329, 2016 WL 7471302, at *4 (C.D. Cal. Dec. 27, 2016) (finding "the risk [the defendant] will continue to make unsolicited phone calls to plaintiff's phone is too speculative to establish a real or immediate threat of repeated injury" because "[the p]laintiff presents no evidence rebutting defendant's evidence that it has respected plaintiff's request not to be called and ceased calling plaintiff"). While a plaintiff can typically rebut a mootness claim by showing that a defendant ceased its wrongdoing voluntarily, the same showing cannot "substitute for the allegation of present or threatened injury upon which initial standing must be based." *Hunter*, 2019 WL 3812063, at *18 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998)); *see also Friends of the Earth*, 528 U.S. at 190 ("[T]here are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness."). In other words, while Defendant does not meet its burden to show that Plaintiff's request is moot, Plaintiff likewise does not meet its burden to show standing. *See Friends of the Earth*, 528 U.S. at 170 ("[I]t is the plaintiff's burden . . . to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue and that the threatened injury is certainly impending.").

In the alternative, the Court grants judgment for Plaintiff on the pleadings pursuant to Rule 12(c). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a

motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss pursuant to Rule 12(b)(6), "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). "Injunction is not a separate cause of action; it is a remedy." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407–08 (S.D.N.Y. 2010). As a result, where a complaint seeks both damages and permanent injunctive relief, "courts have adopted a 'wait and see' approach, retaining jurisdiction in order to mold their judgment to the needs of the case." *Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 333 (Bankr. S.D.N.Y. 1999). However, courts have entered judgment on the pleadings denying a request for injunctive relief where a plaintiff no longer maintains a live claim for damages. *See, e.g.*, *Ohio Players, Inc. v. Polygram Records, Inc.*, No. 99-CV-33, 2000 WL 1616999, at *6 (S.D.N.Y. Oct. 27, 2000) (dismissing on the pleadings the plaintiff's request for injunctive relief where the plaintiff's request for damages was also dismissed); *see also Clark v. Bartling*, No. 08-CV-5, 2009 WL 112985, at *8 (W.D. Okla. Jan. 15, 2009) (same).

Here, the SAC does not contain allegations that, if presumed true, establish that a remedy at law would be inadequate to redress any future harm to Plaintiff. (*See generally* SAC.) In the absence of such allegations, and because Plaintiff no longer maintains a claim for damages, the Court may enter judgment denying Plaintiff's request for an injunction. *See Lary*, 780 F.3d at 1107 (finding the plaintiff "was not entitled to an injunction" where he failed to establish "the

inadequacy of his remedy at law"); *Internal Med. Rural Health Clinic of New Albany, P.A. v. Langmas Grp., Inc.*, No. 18-CV-192, 2019 WL 1905165, at *1 (N.D. Miss. Apr. 26, 2019) (denying injunctive relief on a motion for default judgment where "[the p]laintiff's allegations [do not] establish . . . the inadequacy of its remedy at law").

Plaintiff argues that the Court cannot enter judgment against its request for injunctive relief on this Motion because the Motion is based on a lack of subject matter jurisdiction. (Pl.'s Mem. 8.) The Court disagrees. The case cited by Plaintiff states that "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction." *Steel Co.*, 523 U.S. at 89. In other words, a motion to dismiss for failing to state a claim usually does not raise a jurisdictional issue. *Id.* This principle is not inconsistent with providing Defendant its requested relief. (*See generally* Def.'s Mem.) The Court is unaware of a procedural rule that bars Defendant from combining what would otherwise be two motions—one for judgment, followed by a second for dismissal for lack of jurisdiction—into one.

Thus, because Plaintiff fails to establish a genuine dispute regarding the risk of future harm, and fails to allege an inadequate remedy at law, the Court enters judgment denying its request for injunctive relief pursuant to Rule 56 and, in the alternative, Rule 12(c).[3]

---

[3] As a result, the Court does not consider Plaintiff's argument regarding the enforceability of the injunctive relief to which Defendant is willing to consent. (Pl.'s Mem. 7.) The Court notes, however, that it finds inescapable Defendant's argument that Plaintiff treats litigation as "a game" by "refus[ing] even to let [Defendant] consent to the entry of the very injunction that it sought in its [SAC] if the Court deems such a course necessary to end this case." (Def.'s Reply 7.)

C. The Court's Jurisdiction

Having entered a judgment of $12,000 plus applicable costs for Plaintiff, and entered judgment against Plaintiff's request for injunctive relief, the Court now considers whether it retains jurisdiction. It concludes that it does not, and dismisses the case.

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (citation and quotation marks omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* at 307–08 (alteration and citation omitted). Where "judgment is entered, the plaintiff's individual claims will become moot for purposes of Article III." *Tanasi*, 786 F.3d at 200; *see also Cabala v. Crowley*, 736 F.3d 226, 228 (2d Cir. 2013) ("Only after [the district court enters judgment against the defendant for the proffered amount and directs payment to the plaintiff] is the controversy resolved such that the court lacks further jurisdiction."); *McCauley v. Trans Union, L.L.C.*, 402 F.3d 340, 342 (2d Cir. 2005) ("[Entry of a default] judgment would remove any live controversy from this case and render it moot."). Here, because the Court has entered judgment for the full amount of Plaintiff's damages claim and against Plaintiff's request for injunctive relief, the case is moot.

The Supreme Court's opinion in *Campbell-Ewald v. Gomez*, 577 U.S. 153 (2016), does not control here, because it concerns "an unaccepted settlement offer or offer of judgment," and not a motion for judgment, *id.* at 165. Nonetheless, entering judgment for Plaintiff, as Defendant requests, is consistent with *Campbell-Ewald*'s preserving the ability of an individual plaintiff to petition for class certification. *Id.* ("[A] would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted."). In *Campbell-*

*Ewald*, the Supreme Court rejected a "gambit" of offering judgment to a putative class representative in order "to avoid a potential adverse decision, one that could expose it to damages a thousand-fold larger." *Id.* Indeed, following *Campbell-Ewald*, courts—including this Court—have generally declined to enter judgment or find a case moot where the plaintiff had pending class claims. *See, e.g.*, *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1147 (9th Cir. 2016) ("[W]hen a defendant consents to judgment affording complete relief on a named plaintiff's individual claims before certification, but fails to offer complete relief on the plaintiff's class claims, a court should not enter judgment . . . before the plaintiff has had a fair opportunity to move for class certification."); *Radha Giesmann , MD, P.C. v. Am. Homepatient, Inc*., No. 14-CV-1538, 2016 WL 3407815, at *3 (E.D. Mo. June 16, 2016) (holding that a Rule 67 tender of payment does not moot a dispute where the court has not yet ruled on a motion for class certification); *Fauley v. Royal Canin U.S.A., Inc.*, 143 F. Supp. 3d 763, 765 (N.D. Ill. 2016) (same); *see also S. Orange Chiropractic Ctr., LLC v. Cayan LLC*, No. 15-CV-13069, 2016 WL 1441791, at *7 (D. Mass. Apr. 12, 2016) (finding class claims are not moot even though the plaintiff's individual claim is moot). (*See* 2017 Op. 31 ("[A] representative plaintiff's claim is not mooted where a defendant tenders complete individual relief . . . . The individual plaintiff retains a 'live claim' of her own, and therefore must be afforded an opportunity to seek certification of a class.").) By contrast, courts entering judgment to satisfy an individual plaintiff's claim have done so after denying motions for class certification. *See, e.g.*, *Bais Yaakov*, 461 F. Supp. 3d at 5 (entering judgment after denying class certification in *Bais Yaakov of Spring Valley v. ACT, Inc.*, 328 F.R.D. 6, 8 (D. Mass. 2018)); *Leyse v. Lifetime Ent. Servs., LLC*, 171 F. Supp. 3d 153, 154 (S.D.N.Y. 2016) (entering judgment after "[the p]laintiff's motion for class certification was denied"), *aff'd*, 679 F. App'x 44 (2d Cir. 2017). Here, as in

*Bais Yaakov* and *Leyse*, Plaintiff's motion to certify a class was denied, so it is proper to dismiss

its individual claim as moot.[4,5]

    This outcome is not inconsistent with "the history and tradition of the effect of tender

under the common law."  (Pl.'s Mem. 6.)  The common law rule is that "[a] defendant's offer to

pay the plaintiff—without more—would not have deprived a court of jurisdiction."  *Campbell-*

*Ewald*, 577 U.S. at 169 (Thomas, J., concurring).[6]  Here, as discussed, the Court does not find

---

[4] Justice Kagan's dissent in *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013), separately suggests that this outcome in consistent with *Campbell-Ewald*.  In *Genesis Healthcare*, Justice Kagan stated that "a court has discretion to halt a lawsuit by entering judgment for the plaintiff when the defendant unconditionally surrenders and only the plaintiff's obstinacy or madness prevents her from accepting total victory."  *Id.* at 85 (Kagan, J., dissenting).  In *Campbell-Ewald*, the Court held that it "adopt[ed] Justice Kagan's analysis" from *Campbell-Ewald*.  577 U.S. at 162; *see also id.* at 185 n.1 (Alito, J., dissenting) ("A plaintiff cannot thwart mootness by refusing complete relief presented on a silver platter.").

[5] The Court does not decide whether Plaintiff maintains a sufficient stake in the litigation to appeal the Court's denial of its motion for class certification.  *Compare Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 340 (1980) (holding that "the [d]istrict [c]ourt's entry of judgment in favor of named plaintiffs over their objections did not moot their private case or controversy, and that respondents' individual interest in the litigation . . . is sufficient to permit their appeal of the adverse certification ruling" (emphasis and footnote omitted)), *with Genesis Healthcare*, 569 U.S. at 78 n.5 ("Because *Roper* is distinguishable on the facts, we need not consider its continuing validity in light of our subsequent decision in *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990).").

[6] Because the Court finds that this outcome does not contradict these common law principles, it takes no position on whether they are controlling law in the context of a Rule 68 offer of judgment.

that Defendant's offer of judgment or tender of payment moots the case.[7]  Instead, it finds that

the case is moot after entering judgment on all of Plaintiff's claims for relief.[8]

### III.  Conclusion

For the foregoing reasons, Defendant's Motion is granted.  The Court enters judgment of

$12,000 plus applicable costs for Plaintiff, enters judgment denying Plaintiff's request for

injunctive relief, and dismisses the case as moot pursuant to Rule 12(b)(1).  The Clerk of Court is

respectfully directed to terminate the pending Motion, (Dkt. No. 358), and to close this case.

 SO ORDERED.

Dated:  January  31, 2021
        White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[7] As a result, and unlike the district court in *Leyse*, the Court does not require "deposit of a full settlement with the court."  171 F. Supp. 3d at 156.  Defendant is willing to follow this procedure.  (*See* Reisman Decl. ¶ 5.)  However, this is unnecessary because, as discussed, entry of judgment is sufficient to moot Plaintiff's claims.  *See Tanasi*, 786 F.3d at 200.  Thus, it is irrelevant that Plaintiff has returned Defendant's tender of payment.  (Bellin Decl. ¶ 3 & Ex. A.)  Indeed, after *Leyse* was issued, the Second Circuit established that such a deposit would be insufficient to moot a case, at least where the plaintiff retained active class claims.  *See Zocdoc*, 909 F.3d at 543 (holding that a tender of payment under Rule 67 did not moot the plaintiff's claims).

[8] The Court is not "entering a judgment effectuating an otherwise precluded dismissal."  *Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 850 F.3d 507, 513 (2d Cir. 2017).  As discussed, judgment here is appropriate because it provides Plaintiff "complete relief" on its damages claims.  *ABN*, 485 F.3d at 93.